## THE STATE *vs.* JOHN E. HARBOURNE.

First Judicial District, Hartford, March Term, 1898. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Chapter 68 of the Public Acts of 1893, which prohibits all persons from engaging in the business of transmitting money to any race track or other place to be there bet upon any horse-race, game, sport, etc., whether within or without this State, and also the keeping of any place in which such business is permitted or carried on, is not in violation of the Federal Constitution as a regulation of interstate commerce.

Although a single transfer of money by a telegraph company for betting purposes, does not constitute a carrying on of the prohibited business, yet such act would be relevant and, in connection with other evidence, might be sufficient to prove a violation of the statute.

It is not essential to a violation of the statute by a telegraph company, that its business should relate exclusively to the transmission of money for betting purposes; it is enough if it engages in that business, although its other business may be legitimate telegraphing.

[Submitted on briefs March 3d—decided May 3d, 1898.]

INFORMATION for keeping a place in which the business of transmitting money for betting purposes was permitted and carried on, and for being unlawfully concerned in such business, brought to the City Court of Waterbury and thence, by defendant's appeal, to the District Court of Waterbury and tried to the jury before *Cowell, J.;* verdict and judgment of guilty, and appeal by the accused for alleged errors in the charge of the court. *No error.*

The case is sufficiently stated in the opinion.

*Charles E. Perkins* and *Michael J. Keneally*, for the appellant (the accused).

The business of sending messages and money by telegraph from one State to another, is interstate commerce. Prentice, Pol. Pow. p. 280; *Telegraph Co.* v. *Pendleton*, 122 U. S. 347. It may be that this State could prohibit citizens of this State from betting upon horse-races in other States, or from sending money to be so bet there; but even if that be so, it would be very different from a law prohibiting a telegraph company from sending such messages or money. The distinction is clearly marked. *Leisy* v. *Hardin*, 135 U. S. 100; *Tel. Co.* v. *Tel. Co.*, 96 id. 1; *Tel. Co.* v. *Texas*, 105 id. 460; *Ratterman* v. *Tel. Co.*, 127 id. 411; *Tel. Co.* v. *Pendleton, supra; In re Penn. Telephone Co.*, 48 N. J. Eq. 61; *Dinsmore* v. *New York*, 12 Abb. N. C. 439; *Adams Ex. Co.* v. *Same*, 12 How. Pr. 72; *Western Union* v. *James*, 162 U. S. 650; *Leloup* v. *Mobile*, 127 id. 640.

*Nathaniel R. Bronson*, Prosecuting Attorney, for the appellee (the State).

The Act in question is not a regulation of interstate commerce, but a legitimate exercise of the police power of the State. Cooley, Const. Lim. pp. 704, *et seq.*, 722, 723 and *n.* 2, 741, 742, 595 and *n.* 4; Prentice, Pol. Pow. pp. 103 and *n.* 1, 106 and *n.* 2, 429, 12 and *n.* 3, 13 and *n.* 5, 18; *Railroad Co.* v. *Husen*, 95 U. S. 467; quoted approvingly in *Plumley* v. *Massachusetts*, 155 id. 478. See also *Sherlock* v. *Alling*, 93 id. 104; *Telegraph Co.* v. *Texas*, 105 id. 460; *Smith* v. *Ala-*

*bama,* 124 id. 465 ; *Nashville, etc., Co.* v. *Alabama,* 128 id. 96 ; *Bowman* v. *Chicago, etc., Co.,* 125 id. 465 ; *Morgan* v. *Louisiana,* 118 id. 464 ; *Beer Co.* v. *Massachusetts,* 97 id. 25 ; *Mugler* v. *Kansas,* 123 id. 623 ; *Geer* v. *Connecticut,* 161 id. 534 ; *Patterson* v. *Kentucky,* 97 id. 508; *Phalen* v. *Virginia,* 49 id. 167 ; *Stone* v. *Miss.,* 101 id. 814 ; *Brien* v. *Williamson,* 8 Miss. 14 ; *Mobile* v. *Kendall,* 102 U. S. 698 ; *Escanaba Co.* v. *Chicago,* 107 id. 687 ; *Phila. S. S. Co.* v. *Pennsylvania,* 122 id. 326 ; *Robbins* v. *Shelby Taxing District,* 120 id. 489 ; *New York* v. *Miln,* 11 Pet. 102. If the telegraph company were doing a legitimate business, no doubt State legislative restraints and prohibitions would be contrary to the constitutional provision. We admit that this would be " commerce." *Telegraph Co.* v. *Texas, supra; Ratterman* v. *W. U. T. Co.,* 127 U. S. 411 ; *Pensacola Tel. Co.* v. *W. U. T. Co.,* 96 id. 1. Whether the betting is completed in this State or outside of it, makes no difference. It is the betting that is sought out by the statute.

HALL, J. The Act creating the offenses charged, is directed against that form of gambling known as pool selling, including bets or wagers on the result of any trial of speed, skill or endurance (Public Acts of 1893, p. 240). It prohibits : 1. Keeping any place with apparatus or devices for the purpose of carrying on such gambling. 2. Keeping any place where pool selling of any kind, either directly or indirectly is permitted or carried on. 3. Keeping any place in which the business of transmitting money to any race track or other place there to be placed or bet on any horse-race, etc., whether within or without this State, is permitted or carried on. 4. Making any such wager or buying or selling any such pools. 5. Being concerned in buying or selling any such pools. 6. Being concerned in carrying on the business of the transmission of money to any race track, etc.

The defendant is charged in the first count with a violation of the third prohibition, and in the second count with a violation of the sixth. The defense relies on the alleged unconstitutionality of the Act.

On the trial of the case to the jury, upon the plea of not guilty, "the State claimed and offered evidence to prove, that on the 28th day of January, 1897, the defendant, in the city of Waterbury, was employed by the New Jersey News and Electric Telegraph Company, as the manager of its telegraph office there located; that as such manager he received from one              a telegraphic message in the ordinary form used for transmitting messages, addressed to the Jersey City Commission Company, Jersey City, New Jersey, directing the said Jersey City Commission Company there to bet for the sender of said message the sum of money named therein, and to draw upon Mills & Company, New York City, N. Y., for said money; that at the time of delivery of said message to the defendant the said deposited with the defendant said sum of money to be by him transmitted by telegraph to Mills & Company, New York City, subject to the draft of the said Jersey City Commission Company, and that said telegraph message was by the defendant transmitted by telegraph to the Jersey City Commission Company, and said money was by the defendant transmitted by telegraph to Mills & Company, and that the defendant knew that the purpose in said transmissions was to have said money bet upon a horse-race without this State. The State offered evidence of no other violation of the law.

"The defendant claimed and offered evidence to prove and claimed he had proven, that in the receipt of said message and of said money he was acting as the agent of his said employer in the ordinary course of business of a telegraph company engaged in the business of telegrapher of messages and moneys. The defendant admitted that he knew the purpose for which said money was sent and said message transmitted."

The defendant in writing requested the court to charge the jury as follows: "1. That if the jury shall find that the accused, as charged in the first count of the complaint of the prosecuting attorney, did possess, keep, manage, maintain, and occupy a certain room, office, and place in which the business of transmitting money to a certain race track or

State *v.* Harbourne.

race tracks, or other places without this State, there to be placed or bet on certain horse-races, games, and competitions, with full knowledge thereof, and that said keeping, possessing, managing, maintaining, and occupying was in the ordinary course of the business of a telegraph company, he is guilty of no offense against the laws of this State, as any statute of this State prohibiting such acts would be and is in violation of and against the provisions of the Constitution of the United States, vesting in the Congress of the United States the power of regulating commerce between the States. 2. That if the jury shall find that the accused did in fact, as charged in the second count of said complaint, transmit (by telegraph) money from the city of Waterbury to a place without this State for the purposes alleged in this complaint, and that said transmission was in the ordinary course of the business of a telegraph company, he is not guilty of any offense against the laws of the State, and that a statute of this State which prohibits such act is void, being contrary to said provision of the Constitution of the United States."

The court refused to so charge the jury, but did charge the jury as follows : "That notwithstanding the jury should find that in the keeping, etc., of the place as set forth in the complaint, the accused kept said place for the ordinary purposes of a telegraphic business, yet if the business of transmitting money for the purposes charged in the complaint was carried on in said place, the accused was guilty of a violation of the laws of this State, and the statute prohibiting such act was constitutional ; and that if the jury should find that accused did, as charged in the second count of said complaint, knowingly transmit (by telegraph) moneys from the city of Waterbury to a place without this State to be bet upon a horse-race, that the accused is guilty of a violation of the laws of this State, notwithstanding such transmission may have been in the ordinary course of the business of a telegraph company, and that the statute of this State prohibitive of such act is constitutional."

To the court's refusal to charge as requested, and to the charge as delivered, the defendant duly excepted.

The case was submitted in this court on briefs. In that of the State, it is stated that "the facts are not disputed, nor is it denied that the statute concerning pool selling distinctly prohibits the act done by the accused. He claimed, however, that the law was unconstitutional. No other line of defense was adopted, and no evidence put in to confuse the issue." The brief filed by the defendant in reply, commences thus: "It appears from the brief of counsel for the State that the only question in this case is that of the constitutionality of the Act of 1893, p. 240 of the Public Acts of that year. He also admits that the Act would be invalid as a restraint on interstate commerce, if it cannot be brought within the limits of the police power of the State. This limits the question to the precise point as to whether, under any claim of police power, the State can interfere with messages sent from one State to another, because the legislature thinks that the matters concerning which the messages are sent are such as it does not approve of."

We shall dispose of the appeal on the question to which the counsel on both sides have thus addressed themselves, and which they seem to agree in regarding as the only one presented on the record; assuming that the attention of the jury was properly directed by evidence and instructions, to which it was thought unnecessary to refer in the finding, to the necessity of proof, under the second count, that the defendant, at the time of transmitting the money to be bet, was unlawfully concerned in the carrying on of the business of the transmission of money to places without the State, there to be placed or bet.

The decisions in respect to the power of Congress to regulate commerce among the several States, which is granted by the Constitution, have been numerous and not altogether consistent; but they seem to have established the following propositions: A State law dealing directly and only with interstate commerce, is void; a State law purporting to deal with domestic matters, but being in its effect and essence merely a regulation of interstate commerce, is void; a State law plainly and in good faith dealing only with State mat-

ters, is valid, notwithstanding it may incidentally affect interstate commerce, unless it comes in conflict with some valid statute of the United States on that subject, or, in the absence of legislation, affects such commerce in a particular where the silence of Congress is equivalent to legislative prohibition.

The power of regulating commerce covers such a wide field, that cases must arise where a law passed in the legitimate exercise of the power of domestic legislation, is also, in a sense, a regulation of commerce; but it is not therefore necessarily an invasion of the jurisdiction of Congress, *i. e.*, an exercise of the "power." of regulation; it is an exercise of the "power" of domestic legislation, and is valid unless it conflict with some existing law, or so essentially affects interstate commerce as substantially to disturb those channels of commerce which Congress has seen fit to leave undisturbed. In dealing with such legislation the courts have given a much wider latitude to what is called police legislation, than to other forms of domestic legislation; because police regulations are absolutely essential to the protection of society, and in the main can only be established by the State government.

The law in question is purely a police regulation. For more than two hundred years we have treated wagering as against public policy, and playing at the games which promote wagering has been illegal. The restrictions on playing the games have been removed, but playing for anything of value is still an offense. General Statutes, §§ 2557, 2558. A wager of any kind is illegal; the loser can recover the money lost, and if he does not sue, any person may sue for and recover treble the amount. General Statutes, §§ 2552, 2553 (passed in 1797, Statutes of 1808, p. 361). Betting on horse-races is a penal offense. General Statutes, § 2556. Since the establishment of our government wagering has been held to be, if not absolutely immoral, yet so injurious in its results as to require suppression by penal legislation. Such legislation has for many years past been directed against the business of promoting wagering in its various

forms; and the keeping of places where such business is carried on has been treated as an offense. Indeed, throughout the United States the business of gambling is now recognized as illegitimate, and one whose contracts the courts will, in many cases, refuse to enforce. Within the past two years the United States Supreme Court has said: "This court had occasion many years ago to say that the common forms of gambling were comparatively innocuous, when placed in contrast with the widespread pestilence of lotteries." *Douglas* v. *Kentucky*, 168 U. S. 488, 496. Similar language may appropriately be used in respect to the pool selling against which the Act in question is directed; especially since the perversion of the telegraph to its uses has multiplied many fold its capacity for harm.

The Act of 1893 attempts to reach the root of the evil, by prohibiting the keeping of a place in which this kind of gambling in any of its ramifications is carried on. One of the most dangerous forms is that for which the telegraph is utilized. In prohibiting the keeping of a place in which such a business is carried on, or being concerned in such a business, the State does not attempt to and does not in fact exercise any exclusive power vested in Congress over interstate commerce; it simply prohibits in this State the business of aiding crime, and if such commerce is thereby affected at all, it is the incidental effect of depriving those here engaged in telegraphing, of the profits they might make through the business of promoting gambling in this State. That business is prohibited; and it is immaterial whether it be carried on by an individual in his own house, or by a telegraph company apart from, or as a part of, its ordinary business of telegraphing. In whatever place and by whomsoever the business of promoting gambling is carried on, the offense is committed; and cannot be justified because in committing it a telegram is sent from Connecticut to New Jersey. In *Plumley* v. *Mass.*, 155 U. S. 461, it was claimed that the power of regulating interstate commerce involved the right in all citizens to introduce and sell in any State any harmless article of food, unrestricted by State legisla-

tion; but it was held that a police regulation forbidding the sale in such manner as was likely to induce the citizens of Massachusetts to buy one article under the belief they were buying another, was not a restriction of interstate commerce. The court said (p. 479): "The Constitution of the United States does not secure to any one the privilege of defrauding the public." No more does it secure to any one the privilege of promoting gambling. The same principle, *i. e.*, that a police regulation pure and simple does not become a regulation of interstate commerce, merely because it may incidentally affect the bringing into the State or sending out, of certain articles of commerce, was affirmed in *Geer* v. *Connecticut*, 161 U. S. 519, 534. But when a State attempts to regulate domestic commerce in an article which it recognizes as a legitimate subject of commerce, so as to discriminate in favor of domestic commerce, and against interstate commerce in that article, the law ceases to be a pure police regulation and becomes a direct interference with interstate commerce. *Scott* v. *Donald*, 165 U. S. 58. The law before us is not analogous to the South Carolina Dispensary Law, condemned in *Scott* v. *Donald*. There might be some analogy if the legislature had recognized gambling by telegraph as a legitimate subject of commerce, and had undertaken to authorize the business of transmitting money for the purpose of gambling when the transmission was to places within the State, and to forbid or to regulate it when the transmission was to places without the State. The law comes within the principle illustrated by the cases of *Plumley* v. *Mass.* and *Geer* v. *Conn.*, *supra, Mo. Kan., etc., Ry. Co.* v. *Haber*, 169 U. S. 613, as well as by many other cases unnecessary to cite. It is closely analogous, so far as the principle involved is concerned, to the Georgia law forbidding the running of railway trains on Sunday, which was sustained, although the channels of interstate commerce were thereby blocked for one day out of every seven. The language of the court in announcing the decision is applicable to the present case, and would seem to be conclusive. After reviewing various prior decisions, the court, speaking by MR. JUSTICE HARLAN,

says : " These authorities make it clear that the legislative enactments of the States, passed under their admitted police powers, and having a real relation to the domestic peace, order, health and safety of their people, but which, by their necessary operation, affect to some extent, or for a limited time, the conduct of commerce among the States, are yet not invalid by force alone of the grant of power to Congress to regulate such commerce ; and, if not obnoxious to some other constitutional provision or destructive of some right secured by the fundamental law, are to be respected in the courts of the Union until they are superseded and displaced by some act of Congress passed in execution of the power granted to it by the Constitution. Local laws of the character mentioned have their source in the powers which the States reserved and never surrendered to Congress, of providing for the public health, the public morals and the public safety, and are not, within the meaning of the Constitution, and considered in their own nature, regulations of interstate commerce simply because, for a limited time or to a limited extent, they cover the field occupied by those engaged in such commerce. The statute of Georgia is not directed against interstate commerce. It establishes a rule of civil conduct applicable alike to all freight trains, domestic as well as interstate. It applies to the transportation of interstate freight the same rule precisely that it applies to the transportation of domestic freight." *Hennington* v. *Georgia*, 163 U. S. 299, 317.

In the case at bar the defendant's sole claim was, that if he kept the place as charged and was concerned in the business as charged, yet inasmuch as some of the acts essential to constitute these offenses consisted in the transmission of the information and money to another State, he was guilty of no offense, because a law restricting the ordinary business of telegraphing among the States is void ; and his sole grievance is that the court did not so charge. For the reasons given we think the charge on that point was correct. When one opens an office and makes arrangements and furnishes facilities to enable his customers to sit in his office and gam-

ble upon the results of horse-races in this State and other States, he keeps a place in which the business forbidden by the statute is carried on; and if he knowingly assists in the transmission of money in the course of that business, he is concerned in the business. It is immaterial whether the illegal business is carried on as an wholly independent business, or as a part of an otherwise legitimate business in telegraphing.

For a telegraph company to transmit a single message, and make a single transfer of funds, such as is stated in the finding of the court in the case before us, would not, standing alone, constitute a carrying on of the business of transmitting money for betting purposes. It would, however, be relevant evidence to show that fact, and might be sufficient, in connection with proof that the company furnished special conveniences for the use of those desiring to make such bets, or had no substantial business of any other description.

There is no error in the judgment of the District Court.

In this opinion the other judges concurred.