MANES SOFAS *vs.* JOHN A. McKEE ET AL.

Third Judicial District, New Haven, January Term, 1924.
WHEELER, C. J., BEACH, CURTIS, WEBB and KELLOGG, Js.

Unless otherwise provided by statute, the law will leave parties to an illegal contract where it finds them, since each is *in pari delicto;* but under § 4805, money lost in gaming may be recovered in a civil action.

The word "game" in § 4805 includes any sport or amusement, public or private, and hence includes physical contests, whether of man or beast, when practiced for the purposes of deciding wagers or for

Sofas *v.* McKee.

the purpose of diversion, as well as games of hazard or skill by means of instruments or devices. It refers, therefore, to any of the events mentioned in the related statute, § 4804, as the possible subjects of an illegal wager, and authorizes the recovery of money lost by bets upon horse races.

In such an action the plaintiff offered evidence of admissions by the defendant made in July, 1921, after the plaintiff's gambling operations had ceased, that the men taking the bets were the defendant's agents. The court charged that this might furnish evidence from which an agency from April to July inclusive might be inferred. The defendant assigned this as error, on the ground that the admissions referred to one bet only, made in July, and did not justify the broad inference permitted by the court. *Held* that in the absence of an express finding as to the exact testimony, it would be presumed that the evidence related to the entire period in question.

Whether a witness must first testify as to his means of knowledge of a point in issue before testifying directly upon the point, is a matter to be determined in the wise discretion of the trial court, and it is not error to admit the direct statement first, subject to a motion to strike out if it later appears that the witness is testifying from hearsay or other insufficient sources.

The plaintiff was asked if on a certain occasion he spoke to named persons, and upon his affirmative answer, what he did as a result of what they said. *Held* that since this was offered not to show the conversation as such, but to fix in the mind of the witness the occasion of an interview with the defendant, it was familiar and unobjectionable practice, and in any event was harmless in the present instance.

The bare fact that the plaintiff made other wagers before those which he sought to recover in the present action, *held* irrelevant, but that its admission was harmless error under the circumstances.

Witnesses testified that the plaintiff made certain bets and gave the name of the horse and the amount laid thereon to the "agent." *Held* that there was no error in allowing the word "agent" to stand, since there was no attempt to specify the taker of the bets as the agent of any particular person.

Whether signals were used at a certain betting place is a question of fact to which a witness may testify.

Argued January 22d—decided March 31st, 1924.

ACTION to recover money lost and paid to the defendant by the plaintiff upon bets and wagers made between them on the results of certain horse races, brought to the Superior Court in New Haven County where a demurrer to the complaint was overruled

(*Keeler, J.*), and the cause was afterward tried to the jury before *Marvin, J.;* a nonsuit was entered as to George McKee, a verdict was rendered for the plaintiff against John A. McKee for $2,550, and from the judgment thereon he appealed. *No error.*

*Milton C. Isbell*, with whom, on the brief, was *Ernest L. Isbell*, for the appellant (defendant John A. McKee).

*Robert J. Woodruff* and *Claude B. Maxfield*, with whom was *Bernard Greenberg*, for the appellee (plaintiff).

CURTIS, J. The plaintiff in his complaint alleges as follows: "Between April 20, 1921, and July 20, 1921, all of which is within three months before the bringing of this action, the plaintiff, by making wagers on certain horses which then and there were contesting in certain races, and by betting on the same, and by making various and sundry bets and wagers upon certain horse races with the defendants by their agents, lost $7,000 and paid said sum to the defendants by their agents who won said bets and wagers. Said money has not been repaid to the plaintiff. This action is brought to recover said money, under the statute as to gaming and wagers."

The defendant demurred to the complaint on the ground that no recovery could be had upon the allegations of the complaint, for money lost by wagering on the result of a horse race. The court overruled the demurrer, and its action is made the first ground of error upon the appeal.

Under General Statutes, § 4804, a wager on a horse race is specifically made "utterly void," and under § 6468, betting on a horse race is made a penal offense and is consequently illegal. But the courts of law will leave both parties to such an illegal contract, as a wager, where it finds them, since both are *in pari delicto*, un-

less a remedy is provided by statute. *Funk* v. *Gallivan,* 49 Conn. 124, 128; Williston on Contracts, Vol. 3, § 1679. The plaintiff's right to recover must, therefore, rest upon some statute. The plaintiff claims that § 4804 and §4805 provide him a right or remedy to recover from the defendant such money, if any, as he lost and paid to the defendant upon wagers on the result of horse races. These statutes may be found in the footnote.

The plaintiff claims, in substance, that our statutes make all wagers illegal, and permit the recovery of money lost and paid to another upon any wager. We said in *State* v. *Harbourne,* 70 Conn. 484, 490, 40 Atl. 179: "A wager of any kind is illegal; the loser can recover the money lost." As the trial court properly suggests, these words were a dictum in that case, but were undoubtedly "an expression of what had long been held as well-settled law." That money lost and paid on any wager could be recovered back, was deemed the law by us in deciding that case. This conclusion arose from the reasonable and natural construction of § 4804 and § 4805 taken together as interrelated parts of a harmo-

Sec. 4804. WAGERING CONTRACT VOID. All wagers, and all contracts and securities whereof the whole or any part of the consideration shall be money or other valuable thing won, laid or betted, at any game, horse race, sport or pastime, and all contracts to repay any money knowingly lent at the time and place of such game, race, sport or pastime, to any person so gaming, betting or wagering, or to repay any money lent to any person who shall at such time and place, so pay, bet or wager, shall be utterly void.

Sec. 4805. RECOVERY OF MONEY LOST IN GAMING. Any person who shall, by playing at any game, or betting on the sides or hands of such as play at any game, lose the sum or value of one dollar in the whole and pay or deliver the same, or any part thereof, may, within three months next following, recover from the winner the money, or the value of the goods, so lost and paid or delivered, with costs of suit, in a civil action, without setting forth the special matter in his complaint; and if the defendant shall refuse to testify, if called upon in such action, relative to the discovery of the property so won, he shall be defaulted; but no evidence so given by him shall be offered against him in any criminal prosecution.

nious piece of legislation designed to correct a serious evil. In that view the word "game" in § 4805, when read in connection with § 4804, would reasonably be deemed to refer to any subject which is specifically mentioned in § 4804, as the possible subject of a wager. The above dictum in the *Harbourne* case indicates that the word game was then deemed by us to refer to any event which might be the subject of a wager. In other words, that a game is any uncertain occurrence that may be a vehicle for gaming wagers. Such occurrence need not, of course, be itself illegal. We hold that game as used in § 4805 includes "any sport or amusement, public or private. It includes physical contests, whether of man or beast, when practiced for the purpose of deciding wagers, or for the purpose of diversion, as well as games of hazard or skill by means of instruments or devices." 27 Corpus Juris, p. 968, § 2. The word "game" in § 4805 refers, therefore, to any of the' events mentioned in § 4804, as the possible subjects of a, wager. It is not necessary now to determine whether it has the wider meaning, intimated in the *Harbourne* case. The demurrer was properly overruled and the first ground of appeal is not well taken.

The second, fifth and seventh, and part of the third grounds of error, are based on the claim set up in the demurrer, that the plaintiff could not recover money lost and paid to the defendant upon a wager upon a horse race. Under our ruling that the demurrer was properly overruled, these claims fall to the ground as not well taken.

The defendant claims also, in his third reason of appeal, that the court erred in its charge to the jury made in the following terms: "The case on trial depends on certain rather positive statements said to have been made by the principal defendant to the plaintiff and two or three of his friends at or near the corner of

Chapel and Church Streets in New Haven some days after the plaintiff's gambling operations had ceased. . . . If, however, you believe these statements were made and constituted an admission on the part of John McKee, it may furnish evidence from which you may infer that this agency existed during the months of April 19th to July 19th, inclusive, 1921. . . . I believe the complaint actually said April 20th to July 20th."

The defendant in his brief attacks this charge on the ground that the statements of McKee referred to, relate to one bet made at a certain date in July, and that an admission by McKee as to one bet in July, while it may justify the jury in finding that the men taking that bet at the Orange Club were his agents at that time, yet is not legally to be treated as a basis for an inference that the men conducting the betting there in April, May and June were his agents. This claim is probably sound. 22 Corpus Juris, p. 92, § 30. The fatal defect in the defendant's contention as to this portion of the charge, is that the finding does not disclose that the statements of McKee referred to in these excerpts from the charge relate to one bet made late in July. These excerpts from the charge indicate that in the opinion of the court the jury could only reasonably find that defendant was the proprietor of the Orange Club, betting establishment, during the whole period of April 20th to July 20th, 1921, by an inference from admissions claimed to have been made by McKee after the plaintiff ceased his betting operations in July. The finding does not disclose the nature of these claimed statements by McKee, nor does the charge of the court indicate their nature. Since the court charged that they were a reasonable basis, if believed, for a finding that McKee conducted the betting establishment known as the Orange Club from April 20th to July 20th, presumably they were more than an admission

Sofas *v.* McKee.

of his being the conductor of the business at the time of one bet in July. The statements, so far as the record discloses, may have related to the entire period, April 20th to July 20th. If the facts as to the statement were as the defendant now suggests, he should have caused that state of the facts to appear in the finding. As far as the record discloses there was no error in the charge as above set forth.

The remaining reasons of appeal relate to rulings upon the admission of evidence. Upon the trial the plaintiff was asked upon his direct examination whether he knew what the business of the defendant John McKee was in April, May, June and July, 1921, and answered that he did. He was then asked: "What was McKee's business at that time?" To these questions the defendant objected, upon the ground that the sources of his knowledge should first be shown in order to develop whether he was answering from his own knowledge or from hearsay or by improperly drawing a conclusion. The court admitted the question and the defendant duly excepted. The plaintiff answered, in substance, that McKee's business was that of making and booking bets on horse races. He was then asked where McKee conducted that business. The defendant objected to this inquiry for the same reason, and upon its admission duly excepted. The witness answered, in substance, in West Haven, at the Orange Club.

These questions, to which objection was made, are of a class as to which the wise discretion of the trial court must determine whether to admit a direct answer in the first instance, or only after preliminary testimony as to the source of the knowledge which the witness says that he has. Practical considerations require this reliance on the discretion of the court. If the discretion of the court is exercised by permitting the witness to testify, as here, directly, then, if the

cross-examination discloses that the witness is testifying from hearsay or other insufficient sources, the court, upon motion, should strike the testimony out, and also properly protect the defendant, in its charge, from any possible improper effect upon the jury. It is obviously not practicable to require a witness to detail the sources of his information as to every fact to which he testifies, before he is permitted to directly state the fact as something known to him. This record does not disclose what cross-examination, if any, the defendant gave the plaintiff as to the matters brought out by these questions objected to. Nor does it appear that any motion to strike out the above testimony was made as a result of such cross-examination. Upon the record it does not appear that the court erred in any ruling in relation to the above questions and answers.

The plaintiff was asked, if after a horse race was over, he spoke to Fitzsimmons and Doc Bell (men who were conducting the betting); he answered, "yes." He was then asked: "As a result of what they said what did you do?" The defendant objected to the inquiry and upon its admission duly excepted. The plaintiff answered: "I see him (McKee) after three or four days." Nothing that Fitzsimmons or Doc Bell said was admitted, and the purpose of the inquiry was apparently to fix in the mind of the witness the occasion of an interview with the defendant. This is a familiar practice and was in any event a harmless proceeding.

In his interview with McKee a few days later, the plaintiff testified that the following occurred: The plaintiff stated to McKee that he had been playing with his (McKee's) agents at Savin Rock, West Haven, Orange Club, and he had won $600, and was not paid but was sent to McKee. The plaintiff said further to McKee: "You can ask Mr. Eddie Keenan." Plain-

tiff's counsel then asked: "Who is Eddie Keenan?" Plaintiff replied, in substance, he was the agent I bet with. The defendant moved that the word "agent" be stricken out of the answer. The court denied the motion and the defendant excepted.

The plaintiff had testified that he had in his talk with McKee stated to him that he had been playing with his agents at the Orange Club, and referred McKee to Eddie Keenan for information as to the plaintiff's betting there. The above answer to the question, "Who is Eddie Keenan," the context shows, was in substance that Keenan was one of the agents he had told McKee he was betting with. There was no error in this ruling.

The plaintiff, after he had testified that McKee was conducting a betting establishment at the Orange Club, was asked about a certain paper (chart) used at the Orange Club, whether he knew where it came from; he replied, "From his bookie;" when asked "Whose bookie," he replied "McKee's." The defendant moved that this answer "McKee's" be stricken out, and upon the denial of the motion duly excepted. As the court properly admitted the testimony of the plaintiff that McKee was conducting as his business the booking of bets at the Orange Club, it was but a repetition of its original ruling to permit the answer to stand. Like the testimony received as to the business of McKee, it was subject to a motion to strike out later for the same reasons that a motion to strike out the plaintiff's testimony as to the defendant's business was subject to, as stated above.

The plaintiff was asked: "Did you at any time have occasion to bet on a horse race that was conducted on Sunday?" Objected to by defendant because not limited to the time involved in this action. Later he was asked, in substance, if he made bets on Sunday in

February, 1921, on races in Havana. Objected to for the same reason. The questions were admitted and the witness answered, "Yes." The defendant duly excepted. These questions were irrelevant because not confined to the time involved in this action, but as the answer was merely "yes," their admission was harmless error.

The plaintiff produced Peter Phillips and William Golfinos as witnesses and they testified as to certain bets laid by the plaintiff and on several occasions said, in substance, that the plaintiff gave his bet to the "agent." The defendant moved that the word "agent" be stricken from the answers. The court denied these motions because it appeared that the witness referred to the man who took the bets by the term "agent," and did not attempt to specify that he was the agent of any particular person. There was no error in these rulings.

Golfinos was asked if signals were used at a certain betting place and answered yes. Defendant moved that the testimony be stricken out, as the witness must have been giving an opinion. The giving of signals was a fact as to which the witness could testify. Cross-examination would determine the validity and weight of his testimony.

Golfinos was asked whether John McKee was called by any other name but John. He answered, "He [agent] used to call Jack on the phone. I don't know." Defendant moved that this testimony be stricken out, and upon the denial of his motion took an exception. The purport of the answer was that the witness did not know. The ruling was obviously not erroneous.

There is no error.

In this opinion the other judges concurred.