EDWARD G. HOTCHKISS *vs.* VINCENZO DEVITA ET ALS.

First Judicial District, Hartford, October Term, 1925.

WHEELER, C. J., CURTIS, KEELER, MALTBIE and HAINES, JS.

Partners need not and, but for the provisions of § 5650 of the General Statutes, could not be sued in their firm name.

A partnership may be said to exist between two or more persons whenever the relations between them are such that each is as to all the others, in respect to the business in question, both principal and agent.

Hotchkiss *v.* DeVita.

Although, as between themselves, partners may limit the extent of their mutual agency, they may, as to third parties, still be bound by the apparent as well as the actual scope of their authority.

If the complaint in an action against partners sets forth the operative facts constituting a partnership and is sufficient to apprise the defendants that liability is claimed against all of them, it is no objection to its legal sufficiency that the fact of partnership is not literally alleged.

Whether or not a partnership exists in a given case is, upon conflicting evidence, a question of fact for the jury; or, if the case be tried to the court, it is a conclusion which, if legally and logically supported by the subordinate facts, cannot be disturbed by this court upon appeal.

In the present case, the trial court concluded that all the defendants were copartners engaged in the business of buying and selling automobiles and that, in the sale to the plaintiff of a stolen car, the defendant E was acting within the scope of his partnership authority. *Held* that these conclusions were supported by the subordinate facts.

Although the financial responsibility of the defendants was not in issue under the pleadings, it was properly found as a fact by the trial court, since it was relevant and material as bearing upon the credibility of their testimony.

The defendants claimed that the plaintiff was estopped to assert that he had purchased the car from, or had relied upon the responsibility of, anyone except the defendant E. *Held* that this claim was without merit.

After the trial court, without objection, had admitted certain declarations concerning the partnership made by the defendant E to the plaintiff and to the person to whom the plaintiff had resold the car, the defendants made a motion to strike them out, which was denied. *Held* that the trial court did not err, since the statements were, under any circumstances, admissible against E and, in view of the other evidence establishing prima facie the fact of partnership, were admissible against all the defendants.

Argued October 6th—decided October 17th, 1925.

ACTION to recover damages alleged to have been caused by the sale to the plaintiff of an automobile to which the defendants had no title, brought to the Superior Court in Litchfield County and tried to the court, *Brown, J.;* judgment for the plaintiff for $925, and appeal by the defendants. *No error.*

Plaintiff alleged, among other things, that defend-

ants by Angelo English, their servant and agent, had sold him a Dodge touring car for the sum of $175 in cash, and in trade a Paige coupe at an agreed valuation of $750, making up $925, the purchase price of the Dodge car, which the plaintiff afterward sold for $1,050 to William M. Gillette; that the car was a stolen car, the lawful property of David Lipsky, who subsequently took the same away from Gillette, to whom the plaintiff had been obliged to repay the amount paid him by Gillette. All of these allegations were put in issue by defendants' answer.

The trial court found that plaintiff had resided in Thomaston for the past thirty years, engaged in the undertaking business, and since 1916 had conducted an automobile agency; that all of the defendants have resided in Winsted since prior to 1920, and have been engaged in buying and selling second-hand automobiles from about 1919. James DeVita and Joseph DeVita are both also known by the last name Vita. English had lived in Winsted for seventeen years before the trial, and James DeVita owned and carried on a meat and grocery business during the same period, the same being conducted, for the four years prior to 1920, at 418 Main Street. Defendant English is the brother of James DeVita's wife. On September 30th, 1921, and for a considerable time before and after, all three of the defendants, as proprietors, conducted the business above described under the trade name of Vita's Auto Exchange, or the Vita Auto Exchange Company, and it was located at Winsted. On or about September 30th, English, as agent for the auto exchange, duly authorized and acting within the course of his authority, sold to the plaintiff a 1921 Dodge touring car, for $175 plus a Paige coupe in exchange, at the agreed price of $750, or a total agreed price of $925. Before the sale was completed, and in response

to the plaintiff's offer aggregating $925 as aforesaid, which was a lower figure than had been demanded by him, English told the plaintiff that before he could accept the offer he would have to call his partner on the telephone, and he thereupon called "Number 5 Winsted," which is as much as the plaintiff heard. Number 5 Winsted, at that time, was the telephone listed under the name of J. Vita, and was located in his place of business at 410 Main Street, Winsted. Subsequent to English's talk over the telephone upon this call, the plaintiff's offer was accepted through him, and the markers X-711, which were on the Dodge car, were transferred to the Paige car by English, the Dodge car was left and the Paige car driven away by English. These markers had been issued to James Vita, 410 Main Street, Winsted, under the dealer's registration number X-711, by the Motor Vehicle Department for the year 1921, pursuant to statute. License number X-711 was paid for by the three defendants and used by all of them on the cars in their business, known as Vita's Auto Exchange, as they all well knew. The agreed price of the Dodge car was $925, as shown in an informal memorandum, which was paid by check for $175, given by the plaintiff to English as agent of the three defendants, and the Paige car at the agreed valuation of $750, delivered to English as agent of the three defendants. The check was subsequently endorsed by English and cashed at the First National Bank of Winsted. At the same time, the plaintiff gave to English, what was referred to by both in testimony in answer to questions by defendants' counsel as a "bill of sale" of the Paige car. Whether this was an informal memorandum similar to that relating to the Dodge car which is in evidence, did not appear, English not offering the same in evidence.

On September 30th, 1921, before opening negotia-

tions for the sale of the Dodge car, English presented the plaintiff with a business card of Vita's Auto Exchange, Winsted. On another previous occasion English, in negotiations concerning the sale of another car, had presented the plaintiff with a similar card, and to this extent the plaintiff knew him. The defendant Joseph DeVita had printed a number of cards, reading "Vita's Auto Exchange, Winsted," and the same were used in the secondhand-car business. On October 1st, 1921, the plaintiff sold and delivered the Dodge car to William M. Gillette, of Waterbury, clerk of the District Court of Waterbury, for a money consideration which Gillette paid to the plaintiff. The glass for the two forward doors was missing from the Dodge car at this time. In November, 1921, English told Gillette that he thought he could get the glass which was missing, from a man over in Canaan, and if he didn't call Gillette about it the next morning, for him to call English's partner at the number which he wrote on a Vita Auto Exchange card and handed to him. The two cards given by English to the plaintiff, and the one given to Gillette had become mislaid or lost before the trial.

On March 28th, 1922, one David Lipsky, of Troy, New York, claimed this car as his property; and on that day the plaintiff, in response to a call from Gillette, went to Waterbury, to the police station, where he found Gillette, William P. Keegan, Chief Inspector of the Police Department Detective Bureau of Waterbury, a detective, and David Lipsky, of Troy, New York, who claimed that this Dodge car had been stolen from him and he was the owner thereof. After the plaintiff and Gillette had examined certain documentary evidence of Lipsky's as to the title of the car and compared the same with the numbers on the Dodge car, they acceded and did surrender the car to Lipsky

as a stolen car.  During the trial it was expressly conceded by counsel on behalf of all three defendants that the Dodge car in question was a stolen car to which none of the defendants had title when the plaintiff bought it, and that Gillette, to whom the plaintiff had sold it, was justified in surrendering it to Lipsky; and further, on behalf of English, that judgment should be entered for the plaintiff against him.  The plaintiff was compelled to and did reimburse Gillette for the loss of the Dodge car.

On or about March 30th, 1922, the plaintiff called upon English at his residence in Winsted, and told him about the loss of the car, and that he would have to make good, and the plaintiff was immediately directed by English to go with him to 410 Main Street, where the Auto Exchange business was carried on.  There the plaintiff found the defendants James DeVita and Joseph DeVita, whom he had not known before, and there the three defendants conferred with the plaintiff, relative to a settlement for the loss to the plaintiff by reason of the failure of the title of the Dodge car, but no definite agreement was made.  The defendants, however, said that they would come to the plaintiff's place in Thomaston that same night, in further reference to the matter.  All three defendants came to the plaintiff's place of business that night and conferred with the plaintiff further in reference to the matter, and said they would not do anything further toward settling for the loss, until they had collected of the one from whom they had bought the car.  James DeVita and Joseph DeVita at no time disclaimed to the plaintiff having any interest in the transaction of the Dodge car, although the plaintiff had told them he looked to them and English to remunerate him for his loss.  The defendants have never paid the plaintiff anything or returned any consideration for the loss

of the car, and the plaintiff has not been reimbursed for the loss by anyone.

Vita's Auto Exchange consisted of James DeVita, Joseph DeVita, and Angelo English, doing business as a partnership. The office of Vita's Auto Exchange was located at 410 Main Street, Winsted, the grocery and meat store of James DeVita, where the books were kept, telephone messages relating to the business were received, and the conferences in the course of it were held; and the garage used by the defendants for their secondhand-car business was located in the rear of this store. All of the defendants used telephone Number 5 Winsted in the conduct of the auto business. In a conditional bill of sale from Vita's Auto Exchange and Company to Isabel C. Stewart, which is made a part of the finding, English signed the same as agent as follows: "Vita's Auto Exchange Company, by Angelo English." Angelo English acted at all times in this transaction with the plaintiff as agent of Vita's Auto Exchange. The defendant James DeVita, alone of the three defendants, is financially responsible. The memorandum of decision is made a part of the finding, as are also certain exhibits.

The court, from the facts found, reached the conclusion that all of the defendants were partners, and rendered judgment for plaintiff against all.

The following ruling was made on the trial: Upon the trial the plaintiff testified, without objection, that the defendant English had said to him that before concluding a bargain he, English, must call up his partner by telephone; that later English had told him to call up, and he thereupon proceeded to call up the DeVita telephone number; and also that English had told Gillette to call up his partner as to some glass missing from the door of the Dodge car, giving him the DeVita telephone number. Defendants moved to

strike out this testimony, and the court denied the motion. This denial was made a ground of appeal.

The appeal of defendants James DeVita and Joseph DeVita from the judgment rendered, contains twenty-nine reasons, and in the twenty-ninth reason numerous errors are assigned for refusal of the trial judge to make certain corrections in the finding, which in brief and argument were reduced and condensed into a few claims, which will be stated in the opinion, which also contains other facts.

*Frank B. Munn,* for the appellants (defendants James and Joseph DeVita).

*J. Howard Roberts,* for the appellee (plaintiff).

KEELER, J. The recovery had in this action is founded upon the finding of the trial court that the DeVita brothers and English were partners operating under the trade name of DeVita's Auto Exchange and that plaintiff dealt with the partnership. This conclusion is challenged by the appellants upon the grounds to be shortly stated as contained in their brief and presented upon argument. The exceptions to the action of the trial court as regards the correction of the finding are not meritorious. The finding was corrected as to two of the claims of the motion, and the result is incorporated in the above statement of facts. The other claimed corrections were in many cases statements of the facts as found by the court, in somewhat different language; many of them are requested findings in instances where the trial court has found facts derived from sharply contradictory evidence, and others sought to be sustained solely upon the testimony of the defendants as to points upon which the trial judge in his memorandum specifically states he did not

believe the witnesses. The trial court committed no error in any respect as regards correction of the finding.

The claims of law urged by appellants upon the finding and pressed in argument are as follows: (1) "The finding of the court does not sustain the judgment rendered. The finding that Vita's Auto Exchange was a partnership was not an issue in the case." (2) "The court erred in finding a partnership between Joseph DeVita, James DeVita and Angelo English." As incidental and subsidiary to the claims just stated, it is also claimed (3): "The financial responsibility of the defendants is not an issue in the case and cannot be made the basis of a judgment." (4) "In this case the plaintiff is estopped from claiming that he bought the car on the responsibility of anyone but English." (5) The ruling of the court refusing to strike out the testimony as to the statements of English to the plaintiff and to Gillette, was erroneous.

The appellants' first point is concerned with the pleadings in the case, and they urge that the fact of the existence of a partnership cannot be found by the court, in that the defendants are not named in the writ as partners, nor is there an allegation in the complaint of the existence of a partnership between them. It is true that the three defendants are named in the writ only as individuals. The allegation in the amended complaint as to the interrelations of the defendants is that "the defendants, James Vita, Joseph Vita and Angelo English by Angelo English, their servant and agent, sold and delivered to the plaintiff one Dodge Touring Car," etc., as "the property of the defendants;" and further, that "the plaintiff paid to said Angelo English, as servant and agent of said defendants," the purchase price of the Dodge car, made up of cash and the Paige coupe.

"Partners, at common law, and generally today, in

the absence of statutory authority changing the common law, cannot be sued in the firm name. . . . In some jurisdictions the common-law rule is changed by statutes which provide that partners, or a firm, may be sued by the partnership name, although it is still permissible to sue a firm in the individual names of its members." 20 R. C. L. p. 936, § 155; *Markham* v. *Buckingham,* 21 Iowa, 494, 89 Amer. Dec. 590. Our statute (General Statutes, § 5650) provides that suit may be brought against a partnership by the firm name without inserting in the process the names of the partners, but requires the insertion of the names of the partners after the return of the process to court. This provision clearly indicates the necessity, prior to the enactment of the statute, of stating the individual names in the writ, and certainly the right so to do at the time of issuance of process was not thereby taken away, nor the practice changed, but merely an additional right given a plaintiff to sue by using the partnership name only, provisionally, to be followed by an amendment fully setting forth the defendants' names. But defendants rely more particularly upon the claim that a partnership between the defendants is not expressly set up in the complaint. The allegation of the complaint quoted above, it is true, does not in terms speak of partners or a partnership, but it does allege the agency and service of English for himself and the other defendants; that is to say, the complaint, while omitting the word partners, does in fact set out the mutual agency of the persons involved, that is, the operative facts constituting a partnership. Our frequently quoted definition of a partnership, in *Morgan* v. *Farrel,* 58 Conn. 413, 422, 20 Atl. 614, is that upon "the question of partnership it is sufficiently accurate to say that there is a partnership between two or more persons whenever such a relation exists between them that

each is as to all the others, in respect to some business, both principal and agent. If such a relation exists they are partners; otherwise not. They are partners in that business in respect to which there is this relation; and as to any other business they are not partners. Partnership is but a name for this reciprocal relation."

In *Coady* v. *Igo,* 91 Conn. 54, 56, 98 Atl. 328, we say that while partners may, as between themselves, limit the scope of their mutual agency, still "it is true, . . . as in other relations of principal and agent, . . . the principal may be bound by the apparent, as well as by the actual, scope of the authority of a general agent."

The defendants in this case were all in court, they were apprised by the complaint that all were claimed to be liable upon the transaction relating to the sale of the car, they knew what the controversy was about, and were as well prepared to make any proper defense, as if it had been in terms alleged that they were partners. Such a view is taken by the almost unanimous consensus of authority, and it is generally held that in an action against persons composing a partnership it is not necessary to allege the fact of partnership in the complaint. The fact may still be proven at the trial despite the lack of such an allegation. *Austin* v. *Beall,* 167 Ala. 426, 52 So. 657, 22 Amer. & Eng. Anno. Cases, 510. The very full note appended to the last citation fortifies this rule with comprehensive citation of cases. Conflicting cases are very few. The same rule is laid down in 20 R. C. L. p. 939, § 159. See also note to *Spaulding Mfg. Co.* v. *Godbold,* 29 L. R. A. (N. S.) 283 (92 Ark. 63, 121 S. W. 1063).

The second claim of defendants is that the court erred in finding the existence of a partnership between the defendants. As we have before seen (*Morgan* v. *Farrel, supra*), a partner is both principal and agent,

principal as to himself and agent as to other partners. The question before us in the instant case is whether English acted solely on his own account or as an agent of the partnership. Such an agency, where the facts are conflicting, is one of fact, to be left to the jury, where the case is so tried, and determined by the court in cases tried without a jury, and the question of the correctness of the finding by the court is to be determined by asking whether the ultimate conclusion flows logically, reasonably and legally from the subordinate facts; if so, the determination of the question is conclusive. *Torrey* v. *Holmes,* 10 Conn. 499, 513; *Irving* v. *Shethar,* 71 Conn. 434, 42 Atl. 258; *Indiana Bicycle Co.* v. *Tuttle,* 74 Conn. 489, 51 Atl. 538; *Union Trust Co.* v. *McKeon,* 76 Conn. 508, 514, 57 Atl. 109; *Russo* v. *McAviney,* 96 Conn. 21, 24, 112 Atl. 657; *Dimon* v. *Romeo,* 99 Conn. 197, 121 Atl. 352. When we consider the facts found, as detailed in the above statement, that in one instance English, during the negotiations with plaintiff, said he would have to call up his partner as to the deal and did call up, using the call of the Vita garage; that he told Gillette to call up the same telephone number with reference to the missing glass from the doors of the Dodge car; that the Vita dealers' marker, applied for and paid for by all three defendants, was used upon the Dodge car, and after the sale was transferred to the Paige car; that English, in beginning negotiations with the plaintiff, presented him with the business card of the Vita Auto Exchange, and had presented to him a similar card in a previous negotiation; that this card had been printed and issued by Joseph DeVita for use in the auto business; the attention given by English to the conference at Waterbury, as to return of the car to Lipsky; the taking part of the DeVita brothers in the conference with the plaintiff as to making good the loss to plaintiff, with-

out disclaim of liability on their part, held at the place where the auto business was carried on; the execution of a conditional bill of sale given to Isabel C. Stewart by English on behalf of the auto company;—all of these, together with others appearing in the finding of the court and set forth in the above statement of facts, and the legitimate inferences to be drawn from all of the circumstances surrounding the transaction, justify the finding of a partnership by the trial court as a matter of fact logically, reasonably and legally derived, and in connection with the other facts found fully sustain the judgment of the court.

The third claim of the defendants, that the financial responsibility of the defendants, and particularly that of James DeVita, was not an issue in the case and is immaterial, is not meritorious. It is true that the issue is not raised in the pleadings, as is the case in scores of contested minor issues in any case, but it is relevant and material as bearing upon the credibility of the testimony of James DeVita, as showing bias and a motive to falsify.

The fourth claim of defendants, that plaintiff is estopped to claim that he bought the car from anyone but English and relied on his responsibility alone, in view of the facts found, carries its refutation upon its face. The situation presents no elements of an estoppel. It is simply a group of facts bearing upon the question of agency, and properly to be considered by the court in arriving at a decision.

The fifth claim, that the court erred in not striking out the statements made by English to the plaintiff and to Gillette, is without merit. It appears that the testimony came in originally without objection, and that much other testimony relative to the question of agency had afterward been received bearing upon this particular phase of the case, and the court considered

that a prima facie case of agency tending to prove partnership had been made out. The evidence was also competent against English himself as proving his liability as a partner.

There is no error.

In this opinion the other judges concurred.