JULIUS MACCHIO *v.* JOHN A. BREUNIG ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued December 7, 1938—decided January 5, 1939.

*Charles Albom,* with whom, on the brief, was *Arthur Klein,* for the appellants (defendants).

*Joseph Weiner,* with whom, on the brief, was *Jacob Bellin,* for the appellee (plaintiff).

BROWN, J. The plaintiff brought this action under § 4739 of the General Statutes to recover money he lost and paid to the defendants by betting on certain horse races. The defendants' appeal from the judgment for the plaintiff is predicated upon the court's claimed errors in denying their motion for a more par-

ticular statement, charging the jury, and ruling upon the admission of evidence.

The complaint alleged that between February 3, 1937, and May 3, 1937, the plaintiff by making wagers and betting on certain horses and horse races with the defendants, lost $750 and paid this sum to the defendants who won the bets and wagers; that the money had not been repaid; and the action was brought to recover it. By their motion the defendants asked that the plaintiff be required to set forth specifically the items comprising the money claimed to have been paid by the plaintiff, including dates when the wagers and payments were made, the names of the horses and races on which the bets were placed, the amounts paid to each of the defendants on the wagers, and the method of calculating the total. The court properly denied the motion. The statute expressly provides that the loser may recover money lost in gaming "in a civil action, without setting forth the special matter in his complaint." These words "special matter" are not used in the technical sense which the term connoted as related to defenses in common-law pleading (see 2 Swift's System, 206; 3 Bouvier's Law Dictionary [3d Rev.] 3099), but rather in their ordinary meaning as is indicated by the wording of the statute as originally enacted. That permitted the losing party to recover any sums lost, "by action of debt, founded on this act, to be recovered in any court of record where the sum or value thereof shall be cognizable; in which action it shall be sufficient for the plaintiff to alledge, that the defendant is indebted to the plaintiff, or received to the plaintiff's use the money so lost and paid, or the value of the goods won of the plaintiff, whereby the plaintiff's action accrued to him, according to the form of this act, without setting forth the special matter." Laws of 1808, p. 361. An apparent purpose of the act

was to afford the plaintiff a means of recovery which did not involve a confession of gambling upon his part. The general statement of the plaintiff's cause of action for money had and received in the aggregate amount claimed, satisfied the requirements of the statute. The form for a recovery under the statute in 2 Swift's Digest (Original Edition) p. 570, and also the complaint in *Sofas* v. *McKee,* 100 Conn. 541, 543, 124 Atl. 380, furnish precedents for the complaint under discussion.

The provision of § 4739 quoted entitled the plaintiff to present his case on his complaint as alleged without pleading the details sought by the defendants' motion. Nor does the defendants' argument that each bet affords the basis for a separate cause of action, and therefore the information sought was too significant to fall within the meaning of "special matter," indicate that they deserve a different ruling. The complaint sought a recovery for money lost by "various and sundry bets and wagers." If the defendants desired to make the claim that each bet constituted a separate cause of action, the remedy would have been a motion to separate, and having failed to make that motion they have waived any claim to have the cause of action treated otherwise than as a single one. Practice Book, §§ 100, 101. That being so, the statute is effective to relieve the plaintiff of the necessity of stating the details of the various bets. The court did not err in denying the motion for a more particular statement.

The first claimed error in the charge is the court's failure to state adequately what in law constitutes a partnership and what a joint adventure. The finding shows that the plaintiff offered evidence to prove and claimed to have proved these material facts. From February 16th to April 14, 1937, the plaintiff made certain bets on horse races at the Pickwick Restaurant in Ansonia. Ten of these, aggregating $447, were placed

with the defendant Garritt and the plaintiff lost. As to four other bets made, the plaintiff could not remember whether they were placed with the defendant Garritt or the defendant Breunig, or whether they were won or lost. Incident to his placing another $150 bet, Garritt said he must call up Breunig for authority to accept it; Garritt phoned Breunig of the amount and nature of the proposed bet and he authorized Garritt to accept it, which Garritt did. The plaintiff lost. In April, 1937, Garritt refused payment of a $4 bet won by the plaintiff, and referred him to Breunig to whom he also phoned regarding its payment. Breunig refused to pay, but later offered to pay the plaintiff the amount claimed won if he could produce the winning ticket. This the plaintiff could not do, for all tickets with the notation of bets were kept by either Garritt or Breunig with whom the bets were placed. Breunig was several times in the restaurant taking wagers in Garritt's absence. Two employees paid by Breunig collected wagers and brought them there to Garritt. One of them was later paid by Garritt. Still another worked for both defendants in this betting business. A fourth, Carlino, who worked many years for Breunig who moved to the restaurant to accept wagers on horses, collected wagers and turned them over to either Breunig or Garritt. Winners of bets placed with Garritt were paid with money obtained from Breunig by Carlino. Breunig at first, and later Garritt, paid him. There was a joint enterprise or partnership arrangement between the defendants and the two acted in concert in the horse betting business. Plaintiff's winnings did not exceed $150 during the period.

The defendants offered evidence to prove and claimed to have proved the following facts. Throughout February, March and April, 1937, Garritt as sole owner and operator ran a handbook business of ac-

cepting bets on horse races at the restaurant. He had small means and the bets he accepted were small, usually between $1 and $5. Garritt retained the money paid by bettors who lost, and paid out of his own pocket the bets which they won. The plaintiff placed but five or six small bets with Garritt. At about the period in question Breunig, as a lifelong friend, made loans to Garritt, but had no interest in or connection with his handbook business, received no money lost by the plaintiff, and was not personally involved in any of either his or Garritt's gambling transactions. Twice during 1937, but not within this period, Breunig at Garritt's request, solely for his accommodation, substituted for him in conducting the handbook, turning over all the proceeds to Garritt. On neither occasion did the plaintiff place a bet with Breunig. In April the plaintiff made violent demand of Garritt for $300 claimed won and threatened trouble upon his refusal, because of trickery by the plaintiff, to pay the bet. Garritt, feeling unable to defend himself by reason of a crippled arm, referred him to Breunig because of Breunig's experience in the racing business and for advice. The plaintiff then demanded payment of Breunig who refused, told him he had nothing to do with the bets, and to go to the chief of police. When convicted of gaming in 1935 Breunig gave up a horse betting business he had conducted for years in the Ansonia Hotel as a large operator. During those years Garritt had operated his betting business on the same street, on one occasion worked for him, and subsequently re-entered the business on his own account. When Breunig quit, Garritt continued operating at the restaurant as he had for some time. There was no joint venture or partnership arrangement or agreement between the defendants, nor did they act in concert in

the business of running the handbook conducted by Garritt.

Notwithstanding mention made in the summarizing paragraph of the finding as to both the plaintiff's and the defendants' claims, of "joint enterprise" or "venture" and of "partnership arrangement," the significant and more accurate statement of the decisive issue presented thereby, as made clear by the further reference in both is, did the "defendants act in concert" in this horse betting business. Whether they did act in concert or whether it was the business of Garritt alone, was the concrete question for the jury's determination. Referring to this the court said: "These two defendants are sued as joint operators, apparently. The allegation is that they took bets. If anything here, there is a concert of action. . . . In the last analysis the question will have to be determined by you as to whether these two men or only one or none of them took the bets that are alleged here. . . ." Again: the burden on the plaintiff as to the two defendants is to prove that "they were in fact operating together in a joint enterprise as partners, if you please, and that a wager placed in the hands of one was actually a wager covered by both." And again: to recover from both, the plaintiff must prove "that they were together in a joint enterprise, operating in a sense as partners, with Garritt as the contact man of the public and Breunig as the man behind with the capital. . . . If he has failed to establish that this was a joint enterprise . . . and it develops in your mind that Breunig's position was merely that as a man who from time to time loaned money to Garritt, then Breunig would be out of the picture and Garritt would remain as the person against whom your only verdict could be rendered."

These passages in the charge taken together, giving to the two most significant words therein their com-

mon and ordinary meaning, concretely and sufficiently instructed the jury upon the precise issue which it had to determine. This was, in short, whether both defendants, pursuant to a scheme mutually agreed upon, were engaged in the common enterprise of taking bets on horse races, by the operation of which the plaintiff's money was lost, or whether this was the business of Garritt alone, of which Breunig was a creditor only. If the former was the situation found to have existed, it was sufficient to render both defendants liable under the statute, whether or not the arrangement between them fell within the strict legal definition of either a partnership or a joint adventure. Under the facts claimed to have been proved by them, the determination of the rights of the parties involved in this action would have been in no way affected by submitting to the jury such a definition. *Kornblau* v. *McDermant*, 90 Conn. 624, 635, 98 Atl. 587. The court did not err in excluding the definition of these terms from its charge.

The defendants further claim that the court erred in failing to charge that even though liability was established, the plaintiff could recover "no more than the excess of the plaintiff's losses over his winnings," it being undisputed that the plaintiff won some of his bets during the period referred to in the complaint. The court charged on this question of damages, in substance, simply that the plaintiff was entitled to recover the amounts of the bets which he definitely proved he had made, paid and lost. The relevant provision of § 4739 is that: "Any person who shall, by . . . betting on sides . . . of such a play at any game, lose the sum . . . of one dollar . . . and pay or deliver the same, . . . may . . . recover from the winner the money . . . so lost and paid. . . ." This statute, and § 4738 rendering wagering contracts void, were adopted by the

Legislature for the undoubted purpose of discouraging gambling, the evils of which are well summarized by the court in *Zellers* v. *White*, 208 Ill. 518, 526, 70 N. E. 669. Taken together they were designed to correct a serious evil. *Sofas* v. *McKee*, 100 Conn. 541, 545, 124 Atl. 380. Penalizing the defendants in an action of this nature by denying them credit for bets won by the plaintiff is in accord with the purpose of the two statutes mentioned. Particularly is this true where, as determined by the jury's verdict here, the defendants were engaged in the business of betting on horse races, made a crime by § 6316 of the General Statutes. To permit the credit would be to give legal effect to that which § 4738 declares to be void. While there is a conflict of authority as to whether a set-off of the plaintiff's winnings should be allowed in an action brought upon a statute of this nature (See 27 C. J. 1087, § 330; Ann. Cas. 1918C, Note, pp. 771, 772), a number of those cases allowing the set-off are distinguishable by reason of the different wording of the particular statute involved. For the reasons already stated we conclude that the court did not err in its charge upon this issue.

During the presentation of the plaintiff's case, testimony was offered by him: that incident to a betting transaction with Garritt he heard him telephone Breunig, mention the plaintiff's name, the name of the horse and the amount bet, and that Garritt thereupon said to the plaintiff it was all right; and that on another occasion when the plaintiff was demanding of Garritt payment of a bet won, the ticket for which was missing, Garritt said he would call up Breunig, which he did and stated the situation, and then said that Breunig didn't want to pay it; and this testimony was received only as against Garritt. At the close of the plaintiff's evidence in support of the facts hereinbefore

recited in his claims of proof, on his motion the court told the jury that the above evidence "may now be considered by you as bearing on both defendants, and considered for the purpose of determining whether they were operating in concert and as a joint enterprise." The defendants assign this ruling as error. Sufficient evidence having already come in to indicate, prima facie at least, that the defendants pursuant to some sort of mutual understanding were engaged in the common enterprise of taking bets, this evidence was properly admissible against Breunig as well as against Garritt, for what it was worth. This is the rule in cases involving claimed partnership or conspiracy. *Hotchkiss* v. *DeVita,* 103 Conn. 436, 448, 130 Atl. 668; *Cooke* v. *Weed,* 90 Conn. 544, 548, 97 Atl. 765. It is likewise applicable in the present case involving claimed action by the defendants pursuant to a scheme mutually agreed upon to accomplish a common enterprise. See 2 Wigmore, Evidence (2d Ed.) § 1077. No violation of the rule that a partnership cannot be proved by the declaration of one partner in the absence of the other is involved as contended by the defendants. The other rulings upon evidence do not merit discussion.

There is no error.

In this opinion the other judges concurred.