THE STATE OF CONNECTICUT *vs.* JAMES E. SCOTT.

Third Judicial District, Bridgeport, October Term, 1907.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

It is a principle of our criminal law that all persons who are concerned in the accomplishment of an offense are parties thereto, and, unless otherwise specially provided, are liable to the same penalty, and to the same manner of indictment and prosecution as formerly were common-law principals.

One who supplies a so-called "ticker," together with telegraphic serv-

ice therefor, to the proprietor of a pool-room for its use and main-
tenance, with knowledge of the character of the place and that the
instrumentalities so furnished are used to facilitate the making of
bets and wagers and the purchase and sale of pools on horse-races
and other contests, is guilty of assisting "in maintaining" a pool-
room in violation of the provisions of § 1359 of the General Statutes.

Argued October 25th—decided December 17th, 1907.

INFORMATION for furnishing a " ticker " for use in and
for the maintenance of a pool-room, brought to and re-
served* by the Superior Court in Fairfield County, *Rora-
back, J.*, upon a demurrer to the information, for the advice
of this court.  *Judgment advised for the State.*

The information charges "that on the 13th day of De-
cember, 1905, at Bridgeport, in said county, James E.
Scott, then of said Bridgeport, with force and arms, well
knowing that a certain building, room, office and place
situated in said Bridgeport, and known as No. 37 Bank
Street, was a pool-room, and that on said day one James
E. Burnham did keep, manage, maintain and occupy said
building, room, office and place with apparatus, books,
boards, and other devices, the exact nature and description
of which is to the Attorney unknown, for the purpose of
making, recording and registering certain bets and wagers
and of buying and selling pools upon the result of certain
trials and contests of skill and speed of certain horses, the
the place of such trials and contests not being known to said
Attorney, did furnish to said James E. Burnham for use
in and to maintain said pool-room and building, room, office
and place, a certain apparatus known as a ticker, together
with telegraphic service, automatically printing on a tape,
connected therewith, giving the names of certain horses,
jockeys, weights, odds and the results of said trials and
contests, which said telegraphic service was convenient for,

---

* The attention of counsel having been called to the fact that the
cause was reserved on demurrer, it was agreed that the advice to be
given by this court should end the case, and that a stipulation to
that effect should be filed by the parties and placed on record.  *Re-
porter.*

The State v. Scott.

and was used in said building, room, office and place, for the purpose of enabling said James E. Burnham to conduct, keep and maintain the same, he the said James E. Scott well knowing the purposes for which said ticker and said telegraphic service was used; and so said Attorney for the State says that the said James E. Scott in manner aforesaid, with force and arms, did on said day at said Bridgeport, knowingly assist and aid in the keeping, conducting, and maintaining of said building, room, office and place, for the purposes aforesaid."

*J. Birney Tuttle*, for the accused.

*Galen A. Carter*, Assistant State's Attorney, for the State.

HAMERSLEY, J.   For more than two hundred years we have treated wagering as against public policy, and playing at the games which promote wagering has been illegal. In the legislation adopted for the suppression of gaming, we have uniformly treated those who promote the offense, either by furnishing a place convenient for its commission or any implement used in its commission, as more dangerous to society and deserving a much greater penalty than the persons who win or lose their money. 1 Col. Rec., pp. 527, 289 ; Comp. 1808, p. 360 ; General Statutes (1888) §§ 2552–2573.

Section * 1359 of the Revision of 1902 was first enacted

* § 1359. POOL SELLING. Every person, whether as principal, agent, or servant, who shall own, possess, keep, manage, maintain, or occupy, or who shall assist in keeping, managing, maintaining, or occupying any building, room, office, park, ground, inclosure, or place with apparatus, books, boards, or any device for the purpose of making, recording, or registering bets or wagers, or of buying or selling pools upon the result of any trial or contest of skill, speed, or endurance of man, beast, bird, or machine, or upon the result of any game, competition, political nomination, appointment, or election, whether such trial, contest, game, competition, nomination, appointment, or election, take place either within or without this state, or where pool selling of any kind, either directly or indirectly is per-

in 1893 (Public Acts of 1893, p. 240, Chap. 68), and is directed against that form of gambling known as pool-selling, including bets or wagers on the result of any trial of skill, speed, or endurance. Common forms of gambling are comparatively harmless when placed in contrast with the widespread evil of this form of pool-selling; especially since the perversion of the telegraph to its uses has multiplied many fold its capacity for harm; *State* v. *Harbourne*, 70 Conn. 484, 490, 40 Atl. 179; and so the Act seeks to punish those who are concerned in pool-selling of this kind, *i. e.*, betting upon the results of horse-races and other trials of skill, speed, and endurance, at a place with apparatus and devices convenient for this purpose, whether they are concerned as owners or possessors of the place, as assisting in maintaining the place, its apparatus and devices, or as betting in the pools there bought and sold, or as custodian of any apparatus of any kind used for the purpose of as-

---

mitted or carried on, or in which the business of transmitting money to any race track or other place there to be placed or bet on any horse race, game, sport, competition, nomination, appointment, or election, whether within or without this state, is permitted or carried on in any manner, and every person who shall make, record, or register any such wagers or bets, or buy or sell, or be concerned in buying or selling any such pools, or in carrying on the business of the transmission of money to any race track or other place there to be bet or placed on any horse race, game, sport, competition, nomination, appointment, or election, whether within or without this state, and every person, who being the owner, lessee, or occupant of any building, room, park, ground, inclosure, or place, or part thereof, knowingly permits the same to be used or occupied for any such purposes, shall be fined not more than five hundred dollars, or imprisoned not more than one year, or both; and each day of such owning, keeping, occupying, permitting, or transmitting, shall constitute a separate offense; and whoever becomes the custodian or depositary of any pools, money, property, or thing of value, in any manner wagered or bet upon such result, or of any apparatus of any kind used for the purpose of assisting in buying or selling any such pools or making any such wagers or bets, shall be punished in like manner. The provisions of this section shall not prohibit the giving of purses or premiums for any trial or contest of skill, speed, or endurance of man, beast, bird, or machine, and the charging of an admission or entrance fee to any contestant in any such trial or contest.

sisting in buying or selling any such pools or making any such bets. Section 1387 punishes the person who bets upon any horse-race, by a fine not exceeding $50, but § 1359 punishes the person who, through betting upon a horse-race, becomes concerned in buying or selling the pools therein described, by a fine of not more than $500, or by imprisonment of not more than one year, or both.

The defendant is charged under the provision which punishes every person " who shall assist in keeping, managing, [or] maintaining . . . any . . . place with apparatus, . . . or any device for the purpose of . . . buying or selling pools upon the result of any trial or contest of skill, speed, or endurance of man [or] beast, . . . whether such trial . . . take place either within or without this State." Had the information described this offense substantially in the words of the statute, it would have been good. *State* v. *Falk*, 66 Conn. 250, 256, 33 Atl. 913. The State's Attorney, however, has included in his information a statement of the manner in which the assistance charged was rendered. It is, in substance, thus stated: The defendant furnished, for use in, and to maintain said poolroom and place, a certain apparatus known as a ticker, together with telegraphic service, automatically printing on a tape connected therewith, giving the names of certain horses, etc., and the results of said trials and contests, which said telegraphic service was convenient for and was used in said place for the purpose of maintaining the same, he, the defendant, well-knowing the purposes for which said ticker and said telegraphic service was used; and so said defendant in manner aforesaid did knowingly assist in maintaining said place for the purposes aforesaid. The Attorney has thus limited himself to the proof of a violation of the statute substantially in the manner described. The question, therefore, presented by the demurrer is this: Can the apparatus described as furnished by the defendant, in connection with its use by the defendant for furnishing the telegraphic service described, contribute so directly to the offense of maintaining a place with apparatus for the

purpose of pool-selling, that the defendant can be regarded
as assisting in the maintenance of such a place within the
meaning of the statute ?

The defendant answers this question in the negative, and
in support of his contention relies mainly upon cases which
have held that keeping a place which is a common nui-
sance involves some control over the actual room or place
which constitutes the nuisance, and therefore the aiding
and abetting of one who keeps a common nuisance in-
volves some similar control of the actual room or place.
We do not think the *ratio decidendi* of these cases applies
to the question before us. The keeping of a place " to the
damage and common nuisance of all citizens of the State
there resident," such as the various forms of disorderly,
tippling, and bawdy-houses, may call for proof of some
control of the actual place by the person charged as prin-
cipal, or as aider and abettor. But a place where pool-
selling is carried on is not, for that reason, a public nui-
sance at common law, nor has such place in terms been
made so by the statute. The public injury sought to be
prevented does not consist in an annoyance to the public
of the neighborhood; the place, whether pool-selling goes
on there or not, may be equally harmless to the neighbor-
hood. The statute does not punish its violator as the
technical aider and abettor of a common nuisance.

It is a principle of our criminal law that all persons who
are concerned in the accomplishment of an offense are
parties to that offense, and unless otherwise specially pro-
vided are liable to the same penalty. No general statement
covering all the acts which may involve one as a party to
an offense has been formulated, and such a statement is
obviously impracticable. But the nature of the acts by
which one may become concerned in the accomplishment
of an offense has been illustrated by numberless decisions
as to the effect of particular acts in respect to particular
offenses. Unfortunately the general principles thus illus-
trated have been obscured by the fact that from earliest
times technical and complicated distinctions were estab-

lished for testing the relation to an offense of the parties concerned in its commission. The doer of certain acts was styled the principal, or principal in the first degree, and the doer of certain other acts was styled the accessory. The doer of certain acts prior to the final accomplishment of the offense was styled accessory before the fact; of certain acts during the final accomplishment of the offense, accessory at the fact or principal in the second degree; of certain acts subsequent to the final accomplishment, accessory after the fact. The distinctive terms of principal and accessory were applied only in felonies, and in the early stages of the law all felonies incurred the same penalty—death and forfeiture. In the crime of treason and in all misdemeanors, no person concerned was called accessory, but all concerned were called principals. 1 Hale P. C. 615; 4 Black. Comm., 34; 2 Swift's Digest, 365. This complicated system of nicely technical distinctions has been practically abolished by statute, both here and in England. Now, all persons concerned in the accomplishment of any offense (unless otherwise specially provided) may be indicted, prosecuted and punished in the same manner as principals in that offense were formerly proceeded against. In view of this sweeping change, the general rule for determining whether a person is concerned in an offense charged against him, as settled by the analogies of former decisions, may for the purposes of the present discussion be stated thus: Every one is a party to an offense who either actually commits the offense or does some act which forms part of the offense, or assists in the actual commission of the offense or of any act which forms part thereof, or directly or indirectly counsels or procures any person to commit the offense or do any act forming a part thereof. Counseling or procuring the commission of the offense includes threats, promises, etc., which may have provoked to the offense; the procuring of implements or other means which may have served in its commission, with intent that they shall so serve; and assisting, knowingly and wilfully, the perpretrator of the offense in those

acts which have prepared for, facilitated, or consummated the offense.    2 Stephen's History of Eng. Crim. Law, 229–240.    It is manifest that the nature of the assistance which will render one liable as a party to a particular offense must depend largely upon the nature of that offense.    As to most common-law crimes and many statutory offenses, the nature of the particular offense and of the assistance which may render one a party to it has been settled by a long line of decisions.    But when the question arises, as in this case, in respect to a novel statutory misdemeanor, the nature of the assistance which involves one as a party to the offense thus created must depend upon the peculiar nature of the statutory offense, to be ascertained from the statute itself.

Section 1359 is plainly directed against that form of pool-gambling which includes bets on the results of horse-races and other specified events.    This pool-gambling is the substantive offense created.    Persons concerned in the accomplished crime are made liable to its penalties.    The offense is described in a single sentence, which specifies various ways in which persons may be involved in its commission, but the description of the real offense sought to be prevented culminates in the broad mandate that every person who shall " be concerned in buying or selling any such pools " shall be punished.    Among those specified as contributing to this offense is included every person, whether as principal, agent, or servant, who owns or possesses a place where pool-selling of any kind, either directly or indirectly, is permitted or carried on, and every person who shall assist in maintaining any place with apparatus or any device for the purpose of buying or selling pools upon the result of any trial of skill or speed, etc., whether such trial takes place within or without the State. While each specified mode of assisting in the accomplishment of the main offense is thus made an offense, yet the definition of each mode is given for the purpose of making more certain the punishment of those concerned in the main offense, and should be read and interpreted in the

The State v. Scott.

light of this purpose. In view of these considerations it seems plain that a device by which the information essential to those engaged in the buying and selling of pools is furnished to them in a place used by them for that purpose, is, within the meaning of the statute, a device for the purpose of buying and selling pools, and equally plain that he who, owning such a device, places it, together with the telegraphic service necessary for its use, in a place where to his knowledge pool-selling is carried on, at the service of the possessor of the place, for use therein and in order to maintain the same as a place for buying and selling pools, does, within the meaning of the statute, assist in maintaining a place with apparatus and devices for the purpose of buying and selling pools. Whether or not there may be instances of culpable assistance rendered in maintaining a pool-room so insignificent in degree as to come within the principle *de minimis lex non curat* and not to come within the meaning of the statute, is a question we need not consider. The assistance rendered by the defendant appears to be substantial and valuable. It is immaterial, as affecting his violation of law, whether he furnished this assistance gratuitously or for a compensation measured by a daily rental or a percentage of profits. It is also immaterial whether the defendant furnishes his devices and services for this pool-room only, or is also engaged in furnishing similar devices and services to a large number of people for purposes legitimate, innocent, or even of public benefit. The tradesman who knowingly furnishes implements to a burglar for the purpose of aiding him in a particular burglary cannot escape the penalty of assisting in that crime because he is engaged in selling thousands of the same implements for honest and useful purposes. When he innocently supplies his implements to persons who intend to and do make a bad use of the same, he is in no way responsible for such uses, but when he wrongfully supplies his implements to a known criminal for the purpose and with the intent that they shall be used as a means in the accomplishment of a particular offense, he may by such

conduct become a party to that offense. We are satisfied that the acts charged against the defendant in the information, if fully proved, may be sufficient to bring him within the meaning and letter of § 1359, which punishes, as concerned in the offense of unlawful pool-selling, every person who shall assist in maintaining a place for the purpose of buying or selling pools upon the result of any trial or contest of skill, speed, or endurance of man or beast.

The Superior Court is advised to overrule the demurrer and to render final judgment against the defendant.

Costs in this court will be taxed in favor of the State.

In this opinion the other judges concurred.