STATE v. JAMES CARUSO, also known as Amidore D'Onofrio.

STATE v. JOSEPH TOLLIN.

(*March* 25, 1942.)

RICHARDS and TERRY, J. J., sitting.

*Thomas Herlihy, Jr.,* Deputy Attorney-General, for the State.

*Warren Roberts* for the defendant, James Caruso, alias Amidore D'Onofrio.

Court of General Sesssions for New Castle County, No. 52, November Term, 1940; No. 51, November Term, 1940.

RICHARDS, J.:

The indictments in these cases charge that the defendants, "on the Second day of February, in the year of our Lord one thousand nine hundred and forty with force and arms, at New Castle Hundred in the County aforesaid, being then and there the occupant of a certain room over Burris' Garage, located on Du Pont Boulevard, at Heald Street Cut-Off, at New Castle Hundred in the County and State aforesaid, unlawfully did then and there keep certain paraphernalia, to-wit: run down sheets, paper writing, radio telephone exchange, telephones and adding machines for the purpose of recording bets upon the results of certain contests of speed of beasts, to-wit: Horse racing conducted at a certain race track, the name of which is to the Grand Jurors aforesaid unknown."

It is contended that this language is so vague, indefinite and uncertain that it violates the *Fourteenth Amendment* of the *Constitution of the United States, Section Seven* of *Article One* of the *Constitution of the State of Delaware*, and *Paragraph* 5318 of the *Code* of 1935.

The *Fourteenth Amendment* of the *Constitution of the United States* provides, inter alia, that no state shall deprive any person of life, liberty or property without due process of law.

Section Seven of Article One of the Constitution of the State of Delaware provides, that every accused person has a right to be plainly and fully informed of the nature and cause of the accusation against him; and he shall not be deprived of life, liberty or property, unless by the judgment of his peers or by the law of the land.

Paragraph 5318 of the Code of 1935, provides that "the indictment or information in any criminal case shall contain a plain statement of the elements of the crime, sufficient plainly and fully to inform the defendant of the nature and cause of the accusation against him, in simple and nontechnical language."

The following language found in Wharton's Criminal Procedure, 10th Edition, Volume 21, Page 1013, is well adapted to the cases under consideration: "Under statutes prohibiting gaming and the keeping and exhibiting of gaming devices, no further allegations or descriptions of the devices is required in the indictment or information than that which is sufficient to show that the devices charged to have been unlawfully set up, kept or used fall within the prohibition of the statute, by showing that they were or are something tangible and adapted, devised, or designed for the purpose of playing games of chance or skill for money or other things of value. Any table or other device necessarily used in carrying on any of the prohibited games of chance or skill, is a gaming device, and the setting up or using of such tables being prohibited, an indictment or information charging accused with permitting certain tables to be set up and used for gaming purposes in rooms occupied by him, or under his control, charges an offense under the statute". The present indictments charge the defendants with the unlawful keeping of paraphernalia, to-wit, run down sheets, paper writing, radio telephone exchange, telephones and adding machines for the purpose of recording bets upon the results of certain contests of speed of beasts, to-wit, horse

racing. If they simply charged the keeping of paraphernalia for the purposes aforesaid, we would have no hesitancy in holding them to be vague and uncertain. But they go much further, they describe the articles of which the paraphernalia consists, namely, run down sheets, paper writing, radio telephone exchange, telephones and adding machines.

The statute which the defendants are charged with having offended against, namely, *Section* 4063 of the *Revised Code* of 1935, makes it a misdemeanor for the owner, lessee or occupant of any room, house, building or enclosure, to keep, exhibit, use or employ therein, or permit or allow to be kept, exhibited, used or employed therein; or to be concerned in interest in keeping, exhibiting, using or employing therein, any book or books, device, apparatus or paraphernalia, for the purpose of receiving, recording or registering bets or wagers upon the result of any trial or contest in the State of Delaware, or elsewhere, of skill, speed or power of endurance of man or beast.

The articles which the defendants are charged in the indictment with having unlawfully kept, to-wit, run down sheets, paper writing, radio telephone exchange, telephones and adding machines, all could be used for the purpose of recording bets and it is the use of such articles which is prohibited by the statute. It is true that the words used in the statute are "book or books, device, apparatus or paraphernalia," but the articles above referred to, which the indictment charges the defendant with having unlawfully kept, can all be included in the words of the statute. An indictment must describe the offense charged in language sufficiently clear to fully inform the accused of what he is called upon to meet. This is necessary in order to enable him to prepare for trial, and in order that he may be protected from a subsequent prosecution for the same offense. *State v. Cook,* 6 *W. W. Harr.* (36 *Del.*) 298, 175 A. 200; *State v. Walls,* 4 *Penn.* 408, 56 A. 111; *State v. Morrow,* 1 *Terry* (40 *Del.*) 363, 10 A. 2d 530.

It is contended that in the indictments under consideration the description of the paraphernalia which the defendants are charged with having kept is vague and indefinite. The first item mentioned, "run down sheet," seems to indicate clearly to defendant's attorney what was meant, as he describes them as "indices to show what race a given horse runs in on a specific day, and at what track." The objection is made that any given run down sheet is for a specific race track and for a specific day, and the argument is made that it should be designated in the indictment what particular race track these run down sheets were kept for and what particular days racing they covered. Following this argument to its logical conclusion it might also be necessary to state the particular horses upon which bets were recorded and the amount of each bet. Certainly the words "run down sheets," when used in connection with paraphernalia for the recording of bets, indicate to a person familiar with race tracks and interested in recording bets on horse races, a record or list of the races on certain days. This, we think is sufficient. The position is then taken that "paper writing" could mean any writing or document whatever. That is true, but when made or used in connection with the other articles named in these indictments, the average citizen would understand that the paper writing in question was being used in connection with the business of recording bets upon the result of horse races. It is also contended that the items "telephones," "radio telephone exchange" and "adding machines" are so vague and indefinite that it is impossible to know what is meant. The further suggestion is made that each of these items should be more particularly described by giving the name of the maker and the serial number.

The particularity with which an offense is required to be described in an indictment does not make it necessary to go that far. In the case of *State v. Walls, supra,* the indictment charged that the defendant was concerned in interest in disposing of certain lottery policy to one Catharine John-

son by which certain persons unknown promised that certain particular numbers should, on the happening of a certain contingency in the nature of a lottery, entitle the said Catharine Johnson to receive money: The Court charged the jury in the following language; "And we further say that, although it is necessary that the state should show that the said policy slip alleged to have been furnished to Catharine Johnson contained certain particular numbers it is not incumbent upon the state to prove what those particular numbers were" [4 *Penn.* 408, 56 A. 112].

The language used in these instruments describes the offense charged sufficiently clear to inform the defendants what they are called upon to meet, and does not violate the *Federal* or *State Constitutions,* or *Paragraph* 5318 of the *Code* of 1935.

A number of cases have been cited on behalf of the defendant in support of their position on this point, consisting of, *State v. Morrow,* 1 *Terry* (40 *Del.*) 363, 10 A. 2d 530; *State v. Benton,* 8 *W. W. Harr.* (38 *Del.*) 1, 187 A. 609; *State v. Cook,* 6 *W. W. Harr.* (36 *Del.*) 298, 175 A. 200; *State v. Woods,* 7 *Penn.* 499, 77 A. 490; *State v. McDowell,* 1 *Penn.* 2, 39 A. 454; *State v. Walls,* 4 *Penn.* 408, 56 A. 111; *State v. Donovan,* 5 *Boyce* 40, 90 A. 220; *Lynam v. Hastings,* 7 *W. W. Harr.* (37 *Del.*) 450, 185 A. 91; *Fontana v. United States,* (8 *Cir.*) 262 F. 283; *Jarl v. United States,* (8 *Cir.*) 19 F. 2d 891; *People v. Zambounis,* 251 *N. Y.* 94, 167 *N. E.* 183; and *State v. Jeffords,* (*Mo. Sup.*) 64 *S. W.* 2d 241. These cases all support the general principle of law, that every indictment must set forth the facts which the pleader claims constitute the alleged transgression, sufficiently clear as to inform the defendant of the charge against him, and to enable him to plead a conviction or acquittal in defense of another prosecution for the same offense. They are not helpful in this case, however, as each case turns upon its own particular facts.

The further contention is made that the indictment does not sufficiently charge a violation of the statute, *Volume* 40, *Delaware Laws, Chapter* 220, *Revised Code* 1935, *Paragraph* 4063, because it fails to name the specific contest of speed of beasts, upon the result of which it charges the defendants with having kept the paraphernalia, to-wit, run down sheets, paper writing, radio telephone exchange, telephones and adding machines, for the purpose of recording bets. The statute makes it a misdemeanor for any owner, lessee or occupant of any room or place of any kind, to keep, exhibit, use or employ therein, any book, or books, device, apparatus or paraphernalia for the purpose of receiving, recording or registering bets upon the result of any trial or contest, in the State of Delaware, or elsewhere of skill, speed or power of endurance of man or beast. It is not limited to such offenses committed with respect to such contests in this State, but apparently covers such offenses committed with respect to such contests held anywhere. To require the framer of the indictment, to specify the particular contest with respect to which the paraphernalia alleged in the indictment, was kept for the purpose of recording bets, would make it necessary to allege the place where, the day upon which and the hour of the day that said contest was held. If this is necessary, why is it not also necessary to include the name of the horse upon which the bet is taken and the amount of the bet? It has long been recognized that the pleader is not required to plead his evidence, and to compel him to set out the facts contended for by the defendants, would be contrary to that established principle.

The next reason urged for quashing the indictments, is that the statute which the defendants are charged with having offended against, being *Volume* 40, *Laws of Delaware, Chapter* 220, *Revised Code* 1935, *Paragraph* 4063, violates both the federal and our state constitutions. The manner in which it is claimed said constitutions are not complied with has already been stated in this opinion. In

support of this reason it is argued that the statute is vague, indefinite and uncertain; and that it sets up no ascertainable standards of guilt.

The statute under consideration was enacted by the Legislature for the purpose of suppressing betting and wagering. It is necessarily broad in its scope. But it would have been very difficult for the Legislators to have described with great particularity every act intended to be covered, or to have included a definition of the words used. It not only includes those who keep, exhibit or use, or are concerned in interest in keeping, exhibiting or using, any book or books, device, apparatus or paraphernalia; but also the owner, lessee or occupant of any room, house or place of any kind, who keeps, exhibits or uses, or permits the keeping, exhibiting or using of such articles, or is concerned in interest in keeping, exhibiting or using such articles for the purpose of receiving, recording or registering bets or wagers upon the result of any trial, or contest, in the State of Delaware, or elsewhere, of skill, speed or power of endurance of man or beast. And it also includes those who record or register, such bets or wagers, or receives, contracts or agrees to receive any money or thing of value for the purpose, or with the intent to bet or wager, for himself or any other person or persons, such money or any thing of value upon the result of such trials or contests.

In *State v. Scott,* 80 *Conn.* 317, 68 A. 258, 259, the Court used the following language, which shows what the attitude of the Courts has been in construing statutes dealing with offenses of this character; "For more than 200 years we have treated wagering as against public policy, and playing at the games which promote wagering has been illegal. In the legislation adopted for the suppression of gaming we have uniformly treated those who promote the offense, either by furnishing a place convenient for its commission or any implement used in its commission, as more dangerous to so-

ciety and deserving a much greater penalty than the persons who win or lose their money."

There can be no doubt that the words "book or books, device, apparatus or paraphernalia," have a very broad meaning.

The statute was not designed for the purpose of punishing the mere possession of such articles, but only when they are kept, exhibited or used "for the purpose of receiving, recording, or registering bets or wagers."

The question of intention is not directly raised by the statute. But it does clearly appear that the law was intended for the purpose of preventing the keeping, exhibiting or using, of any "book or books, device, apparatus or paraphernalia, for the purpose of receiving, recording, or registering bets or wagers."

When the statute is given this reasonable interpretation, the words "book or books, device, apparatus or paraphernalia" are not vague and uncertain, and said statute does not appear to be arbitrary and unreasonable.

In *State v. Scott,* 80 *Conn.* 317, 68 A. 258; *People v. Wilson, City Ct. Rochester,* 4 *N. Y.* S. 2d 592; *People v. Ryan,* 15 *Cal.* 2d 492, 102 P. 2d 320, 321; and *Ex parte Thompson,* 59 *Okl. Cr.* 410, 60 P. 2d 634; convictions were obtained under statutes worded very much like the statute involved in this case. These convictions were upheld by the Courts, but the question of the constitutionality of the statute was only raised in one case. In *State v. Scott, supra,* the statute upon which the charge was based provided, that every person who owned, possessed or maintained, or who assisted in keeping, maintaining or occupying any building, room or office, with apparatus, books, boards or devices for the purpose of making, recording or registering bets or wagers, or of buying or selling pools, upon the result of any trial or contest of skill, speed or endurance of man or beast, should be subject

to fine and imprisonment. The defendant Scott was charged with assisting to maintain a place for buying and selling pools, by furnishing the proprietor of a pool room an apparatus known as a "ticker," together with telegraphic service automatically printing on a tape connected with it, the names of certain horses and the results of trials and contests, knowing the purpose for which it was to be used. The Court overruled a demurrer to the indictment, saying, "Section 1359 is plainly directed against that form of pool gambling which includes bets on the results of horse races and other specified events. This pool gambling is the substantive offense created. * * * Among those specified as contributing to this offense is included every person, whether as principal, agent, or servant, who owns or possesses a place where pool selling of any kind, either directly or indirectly, is permitted or carried on, and every person who shall assist in maintaining, any place with apparatus or any device for the purpose of buying or selling pools upon the result of any trial of skill or speed" [80 *Conn.* 317, 68 A. 361]. This case is not exactly like the case now before the Court, but it is helpful to the position taken by the State in support of this indictment. The statute prohibited the assistance to any one who kept a place with apparatus, books, boards or any device for the purpose of making, recording or registering bets or wagers; and the defendant, who furnished a device known as a "ticker" to the operator of a pool room, was indicted as an assistant. He did nothing more than furnish the device, the purpose for which he furnished it apparently was never considered.

We agree with the rule of law laid down in the cases of *Connally v. General Const. Co.*, 269 *U. S.* 385, 46 *S. Ct.* 126, 70 *L. Ed.* 322; *People v. O'Gorman*, 274 *N. Y.* 284, 8 *N. E.* 2d 862, 110 *A. L. R.* 1231 and *Lanzetta v. State of New Jersey*, 306 *U. S.* 451, 59 *S. Ct.* 618, 83 *L. Ed.* 888. That rule is, that the terms of a penal statute, especially one which creates a new offense, must be so clear that those who are

subject to it will be able to understand what conduct on their part will make them liable to the punishment imposed by it. The statutes being construed in these cases, however, were of a local application, and were not designed to suppress conduct which is generally held to be against public policy.

What is termed as the law meaning of the word "paraphernalia" is not helpful in the case. But the definition found in Funk and Wagnall's New Standard Dictionary, "miscellaneous articles, belongings" we think expresses very well the generally accepted meaning of the word. It should be remembered that the word is not the only word used in the statute describing the offense desired to be prohibited. The language used being, "whoever keeps exhibits or uses, or is concerned in interest in keeping, exhibiting or using, any book or books, device, apparatus or paraphernalia for the purpose of receiving, recording or registering bets or wagers."

In order to understand these words it is not necessary to indulge in any presumptions, as the Court seemed to think was necessary in the case of *State v. Grimmett*, 33 *Idaho* 203, 193 P. 380. Nor does the statute make a crime of a perfectly innocent act, as in the cases of *State v. Burns*, 53 *Idaho* 418, 23 P. 2d 731, and *Proctor v. State*, 15 *Okl. Cr.* 338, 176 P. 771.

Certainly the average person who reads the statute in question, will understand that the purpose which the Legislature wanted to accomplish was the suppression of gambling. Such a person will also be able to understand what acts are prohibited by the statute, including being concerned in interest in keeping, exhibiting, using or employing, in any room, house, building, enclosure, or place of any kind, any book or books, device, apparatus or paraphernalia for the purpose of receiving, recording or registering bets or wagers upon the result of any trial or contest, of skill, speed or power of endurance of man or beast.

It is also argued on behalf of the defendants, that the statute violates *section sixteen of article two* of the *Constitution* of this State, because the title hereof is misleading and deceptive. This provision of the *Constitution* is "No bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title."

Attention is called to the fact that the statute in question is an amendatory statute, the original act dealing with the subject of gambling, being *Chapter Forty-one* of *Volume Twenty* of the *Laws of Delaware*. The title to this original act reads "An Act for the Suppression of Betting and Wagering upon Contests of Skill or Speed." No contention is made that the title of this Act violates the constitutional provision quoted above. The title to the act now before the Court for consideration, being *Chapter two hundred and twenty* of *Volume forty* of the *Laws of Delaware,* amending *paragraph 3572, section* 137 of *chapter* 100 of the *Revised Code* of 1915, is in the following language: "An Act to amend the first paragraph of 3572. *Sec.* 137 of *Chapter* 100 of the *Revised Code* of 1915, relating to betting and wagering upon contests of skill or speed." The purpose which the Legislature desired to accomplish by enacting the original law, was the discouragement and prevention of betting and wagering upon the result of any trial or contest, of skill, speed or power of endurance of man or beast. The amendatory act was passed for this same general purpose. In fact, there is no material difference between the provisions of the original Act and those of the amendatory act.

The actual difference being, that the last act made an exception of bets and wagers made within the enclosure of any race meeting licensed by the Delaware Racing Commission; and increased the penalties by providing for fine or imprisonment, or both, while the original act only provided for imprisonment in default of the payment of the fine im-

posed. The argument is made that the portion of the amendatory act which increases the penalty for keeping paraphernalia for the purpose of receiving or recording bets or wagers upon contests of speed of man or beasts, contains subject matter which is not expressed in its title. And further, that the keeping of paraphernalia is a distinct and separate offense from that of betting and wagering. Neither the original act nor the amendatory act, make the keeping of paraphernalia for the purpose of receiving or ecording bets or wagers, a separate and distinct offense i idependent of the other provisions of the acts. The general purpose of both acts, as previously stated, being to prevent the keeping, exhibiting or using, any book or books, device, apparatus or paraphernalia for the purpose of receiving, recording or registering bets or wagers upon the result of any trial, or contest, of skill, speed or power of endurance of man or beast. The title of each Act indicates that it relates to betting and wagering, and each Act includes a penalty for those who violate its provisions. Without a penalty the State would not derive any benefit from the Act as it would be impossible to enforce it. Betting and wagering is the thing intended to be prevented by each statute and if the punishment provided for the offense is not germane to the title there was no reason for their enactment. If the constitutionality of the Amendatory Act is affected for this reason, the constitutionality of the original Act is likewise affected, because each Act provides a penalty for the offense created thereby. The fact that the Amendatory Act provides for a greater penalty than that prescribed by the original Act is not sufficient reason for holding that the title is vague and uncertain, or that it violates *section sixteen* of *article two* of the *constitution*.

This provision of the constitution has been construed by our own Court on numerous occasions and it is needless to look elsewhere for authority. The decisions are all to the effect that the purpose of such a provision is, "First,

to prevent hodgepodge or log-rolling legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation * * *; third, to fairly apprise the people through such publication of legislative proceedings as is usually made of the subjects of legislation that are being considered, in order that they may have an opportunity of being heard thereon by petition or otherwise, if they shall so desire." *Equitable Guarantee & Trust Co. v. Donahoe, 3 Penn.* 191, 49 A. 372, 373; *State v. Grier,* 4 *Boyce* 322, 88 A. 579; *Wilmington Trust Co. v. Highfield,* 4 *W. W. Harr.* (34 *Del.*) 394, 153 A. 864; *In re Cypress Farms Ditch,* 7 *W. W. Harr.* (37 *Del.*) 71, 180 A. 536.

In *State v. Grier, supra.* [4 *Boyce* 322, 88 A. 586], the Court said, "The authorities all agree that if the provisions of the act relate directly or indirectly to the same subject, are naturally connected, and are not foreign to the subject expressed in the title, they will not be held unconstitutional, as in violation of the provision under consideration. It is not violated by any act having various details properly pertinent and germane to one general subject."

Certainly the penalty included in a statute to suppress betting and wagering, which is the subject expressed in the title, is directly connected with said subject and cannot be considered as foreign to it. No ingenious reasoning is required for the average person to understand, that an act of the legislature relating to betting and wagering upon contests of skill or speed, included a penalty for a violation of its provisions.

Our Court has consistently held that the title to an act of the legislature does not have to be an index to the entire act, but it must at least give a reasonable intimation of the subject dealt with. *In re Cypress Farms Ditch,* 7 *W. W. Harr.* (37 *Del.*) 71.

■ The defendants rely on *People v. Howe,* 177 *N. Y.* 499, 69 *N. E.* 1114, 66 *L. R. A.* 664, *Bonagur v. Orlandi,* 51 *Misc.* 582, 101 *N. Y. S.* 115, and *Coolidge v. Meagher,* 100 *Mont.* 172, 46 P. 2d 684 in support of their argument on this point. An examination of these cases, however, discloses that in each one of them it clearly appeared that the body of the act contains subject matter which is not expressed in the title thereto.

■ Attention is called on behalf of the defendant, to the fact that the statute in describing the offense for which the said defendants are indicted, uses the words, "* * * the result of any trial, or contest, * * * of * * * speed * * * of * * * beast * * *," but that the indictment uses the words, "the results of certain contests of speed of beasts." From this it is argued that the indictment is fatally defective, because it uses the word "contests," which is plural, while in the statute the word "contest," which is singular, is used.

In order to reach this conclusion one must fail to recognize the fact that the words of the statute are, "any trial, or contest, * * * of skill, speed or power." This clearly means more than one contest and gives to the language a plural meaning, notwithstanding the fact that the words "contest" and "beast" are used in the singular.

To agree with the view of the defendants it would be necessary to hold that the statute was intended to apply to one single contest and no other. This we are unable to do.

We also think that the contention of the defendants on this point is answered by the rules of *Construction of Statutes* as found in the third paragraph of *Section one* of *Chapter one* of the *Code* of 1935. These rules provide, "Every word importing the singular number only, may extend to and embrace the plural number; and every word importing the

plural number only, may be applied and confined to the singular number, as well as the plural."

Can there be any doubt that this rule was intended to embrace a case of this character?

The motion to quash is denied.