In a trial to the court, the defendant was found not guilty of pool selling (General Statutes § 53-295) and guilty of violation of the policy statute (§ 53-298). He has appealed from the conviction on the latter charge, stating that he desired to have reviewed the court's conclusion upon the facts, pursuant to Circuit Court Rule 7.21.1.
The court made a finding in substance as follows: On May 20, 1960, the defendant rented a small office room in Hartford under the name of New England News Service. Two telephones were installed for the leased premises, but the name "New England News Service" did not ever appear on the office directory *Page 71 
in the entrance of the five-story building in which the leased premises were located. On January 13, 1961, members of the Hartford police department and state police department came to the premises at about 4:30 p.m. and found the door locked. After they persistently sought admittance, the door was unlocked and they were admitted by the defendant. They found in the room a long table upon which were two telephones, a radio, a few magazines and a paper on which were listed horse-race results for four tracks (Charles Town, Tropical Park, Fair Grounds and Santa Anita). This paper also contained figures showing the parimutuel payoffs for the races that had been run that day up to the time the officers visited the premises. In addition, there were separate computations for combined payoffs at the races at Tropical Park. These combined payoffs are the figures used in compiling the number that is the winning number for that day's policy play. The compilation on the sheet of the paper showed that 5 and 7 were the first two digits of the three-digit winning number for that day. At 3:55 p.m. on January 13, 1961, the sixth race was run at Tropical Park. In order to compile the third digit for the winning policy play number, seven races had to be run at Tropical Park. While the officers were on the defendant's premises, the telephone rang seventeen times in thirty-five minutes. Each time the telephone rang, Lieutenant Roach of the Hartford police department answered it. Each time the officer answered the telephone, the caller would hang up without speaking, and each time the telephone rang, the defendant proceeded to engage in loud and continuing conversation. He did not testify at the trial.
The court concluded that the defendant was guilty of "maintaining and occupying a room numbered 303, located at 721 Main Street, Hartford, for the *Page 72 
purpose of assisting in the buying or selling of policy play." The assignments of error pursued by the defendant in his brief, which are the only assignments we consider, challenge (a) the court's conclusion; (b) the ruling of the court in admitting certain evidence and certain exhibits; and (c) the ruling of the court on the defendant's motion to correct the finding.
With respect to the first claim of the defendant, the basic contention is that the court's finding that the defendant maintained and occupied the room "for the purpose of assisting in the buying or selling of policy play" fails to establish that the defendant committed a violation of § 53-298. Although it is true that a literal reading of the court's conclusion fails to match in haec verba any offense specifically proscribed by § 53-298, that section purports to punish any person who "takes part in any way in such game of chance, business, scheme, occupation, betting or wagering [commonly known as policy], in or out of any such office or place." In this respect, the statute is analogous to the statute in State
v. Scott, 80 Conn. 317, 324, where the court noted: "The offense is described in a single sentence, which specifies various ways in which persons may be involved in its commission, but the description of the real offense sought to be prevented culminates in the broad mandate that every person who . . . [takes part in any way in policy playing] shall be punished. . . . While each specified mode of assisting in the accomplishment of the main offense is thus made an offense, yet the definition of each mode is given for the purpose of making more certain the punishment of those concerned in the main offense, and should be read and interpreted in the light of this purpose." Hence, the court's conclusion merely sets forth the manner in which the court found that the defendant was taking part *Page 73 
in policy playing, i.e. that the defendant maintained and occupied the room for the purpose of assisting in the buying or selling of policy playing.
The obvious inference to be drawn from the telephone calls and the policy number compilation of the defendant is that he assisted the buying and selling of policy by giving either the race results or the numbers, as compiled from the results, to those who were interested in either buying or selling policy play. We must find, as did the trial court inferentially, that the degree of "assistance" rendered by the compilation and transmission of this information is so great as to constitute a violation of the statute. State v. Scott, supra.
The defendant also claims that the subordinate facts do not support the court's conclusion. In making this contention, the defendant ignores the strong inference to be drawn from his failure to testify about matters necessarily within his knowledge. See State v. Guilfoyle, 109 Conn. 124, 144. The inference that he was taking part in policy playing could logically be drawn from several of the subordinate facts: the intensive telephone inquiries; the tally sheet with payoff information compiled in such a way that the sole usefulness of the sheet would lie in connection with policy playing; the two telephones in the room without any ostensible purpose other than the dispensing of information relating to race results; the loud conversation of the defendant when the telephone rang, showing knowledge on his part that the conversation was potentially prejudicial to a claim of innocence; an obvious attempt to warn the caller not to engage in conversation; and the failure of the defendant to list the name "New England News Service" on the building directory, although he had been a tenant for almost seven months. These subordinate facts, when coupled with the failure of the *Page 74 
defendant to take the stand, were sufficient to support the finding of the trier that the defendant maintained and occupied the premises "for the purpose of assisting in the buying or selling of policy play."
The other assignments of error require little consideration. Those addressed to the rulings on evidence are not considered because the questions are not presented in the manner required by the Circuit Court Rule 7.29.1(4). The motion to correct the finding asked the court to add to the finding the following: "The accused did not in any way engage in the buying or selling of policy." The court, in response to the motion, found that there was "no evidence of any purchase or sale of policy on the premises or person of the accused." In the light of the evidence, the court properly limited its finding to this language. The court was not required to adopt the language of the motion, even though that language was used by one of the witnesses. The court's interpretation of the meaning of that language was set forth in its correction to the finding.
 There is no error.
In this opinion WILLIAMS and O'CONNOR, JS., concurred.