**UNITED STATES of America ex rel. John M. RAFANELLO, Relator-Appellant,**

v.

**Harold E. HEGSTROM, Connecticut State Jail Administrator, Patrick J. Hogan, Jail Correctional Director, Respondents-Appellees.**

**No. 501, Docket 28924.**

United States Court of Appeals Second Circuit.

Argued June 9, 1964.

Decided Aug. 19, 1964.

Connecticut Superior Court for violating Conn.Gen.Stat. § 53–295. His conviction was affirmed on appeal to the Supreme Court of Errors, State v. Rafanello, Conn., 199 A.2d 13 (1964) and his subsequent application for a writ of habeas corpus in the District Court for the District of Connecticut was denied. Thereafter, a certificate of probable cause was granted. We affirm the denial of the writ.

The information charged relator with "POOL SELLING, * * * that at the City of Bristol, on or about the twenty-fourth day of July, 1961, * * * [relator] was concerned in buying and selling pools upon the results of horse races, in violation of section 53–295 as amended * * *." That section,[1] which is titled "Pool selling," makes it unlawful *inter alia*, to make, record or register any wagers or bets or to buy or sell or to be concerned in buying or selling any pools on horse races and other sports. While the evidence was plain that relator had taken

Morton C. Hansen, Jr., Simsbury, Conn., for relator-appellant.

Harry W. Hultgren, Jr., Asst. State's Atty., for respondents-appellees.

Before MOORE, SMITH and MARSHALL, Circuit Judges.

MOORE, Circuit Judge:

Relator-appellant was convicted as a second offender upon a jury verdict in the

---

1. "Pool selling

"Any person, whether as principal, agent or servant, who owns, possesses, keeps, manages, maintains or occupies, or assists in keeping, managing, maintaining or occupying, any building, room, office, park, ground, enclosure or place with apparatus, books or boards or any device for the purpose of making, recording or registering bets or wagers, or of buying or selling pools upon the result of any trial or contest of skill, speed or endurance of man, beast, bird or machine, or upon the result of any game, competition, political nomination, appointment or election, whether such trial, contest, game, competition, nomination, appointment or election takes place either within or without this state, or where pool selling of any kind, either directly or indirectly, is permitted or carried on, or in which the business of transmitting money to any race track or other place there to be placed or bet on any horse race, game, sport, competition, nomination, appointment or election, whether within or without this state, is permitted or carried on in any manner, and any person who keeps a place which is reputed to be a place resorted to for the purpose of selling pools upon the result of any election, and any person who makes, records or

registers any such wagers or bets, or buys or sells, or is concerned in buying or selling, any such pools, or in carrying on the business of the transmission of money to any race track or other place thereto be bet or placed on any horse race, game, sport, competition, nomination, appointment or election, whether within or without this state, and any person who, being the owner, lessee or occupant of any building, room, park, ground, enclosure or place, or part thereof, knowingly permits the same to be used or occupied for any such purpose, on the first conviction shall be fined not more than five hundred dollars or be imprisoned not more than one year or be both fined and imprisoned; and on a second conviction shall be fined not more than fifteen hundred dollars or be imprisoned not more than two years or both; * * *."
* * * * *
"Any person who becomes the custodian or depositary of any pools, money, property or thing of value, in any manner wagered or bet upon such result, or of any apparatus of any kind used for the purpose of assisting in buying or selling any such pools or making any such wagers or bets, shall be punished in like manner."

bets on horse races, an activity clearly prohibited under section 53–295, his theory is that pool selling is a separate and distinct crime and that there was no evidence to support his conviction for such an offense. In substance, the argument is that the information was overly particular. The Connecticut Supreme Court of Errors held that the alleged defect was at best a variance which was not objected to at trial and which did not prejudice relator's defense.

In support of the narrow distinction relator would draw between pool selling and accepting wagers, relator relies on one sentence in State v. Fico, 147 Conn. 426, 162 A.2d 697, 699 (1960), reiterated in State v. Matula, 2 Conn.Cir. 127, 196 A.2d 124 (1963), and argues that pool selling is restricted to "the receiving from several persons of wagers on the same event, *the total sum of which is to be given the winners,* subject ordinarily to a deduction of a commission by the seller of the pool." (Emphasis added.) While this definition describes pool selling with utmost precision by focusing on the way the winner's award is determined, it is clear that the term is not limited to so narrow a meaning. An altogether reasonable construction would be that pool selling is meant as the broad, all encompassing term which includes the taking of bets and wagers. The Connecticut Supreme Court of Errors has indicated that this section was directed against "that form of pool gambling which includes bets on the results of horse races and other specified events." See State v. Scott, 80 Conn. 317, 68 A. 258, 261 (1907). In State v. Pac, 23 Conn.Sup. 12, 175 A.2d 715 (App.Div. 1961), the court defined pool selling as merely involving "a plurality of wagers. It 'consists of the receiving from several persons of wagers on the same event.'" Similarly, in State v. Bassano, 22 Conn. Sup. 507, 175 A.2d 385 (App.Div.1961), the court affirmed a section 53–295 conviction, observing that pools were "mon-

ey and property wagered or bet upon the result of a horse race." More important is the manner in which the trial court defined the crime with which relator was charged in instructing the jury after the close of all the evidence:

> "A pool, as that term is used in the statute, involves the selling or distribution of shares, chances or wagers in a wagering enterprise on the outcome of an event, in this case a horse race. It involves the placing of wagers or stakes on the outcome of a race. A pool in gambling on horse races is an arrangement for betting by which some bettors or wagerors receive back more than they bet or wager, the win or loss to be determined by the outcome of a particular race * * *."

In view of this charge, which makes no mention of the way winnings are determined, it is difficult to conclude that relator was not convicted of the crime alleged in the information.

Even assuming that pool selling is a separate and distinct crime, relator has in no way been prejudiced since the distinguishing feature (the method by which the winnings are computed) was surplusage as to him. Since pool selling, on relator's theory, includes taking bets or wagers, or being concerned therewith, he was convicted of a crime necessarily included in that charged.

Relator makes no allegation that he was not informed of the charge against him, that he has been deprived of protection against another prosecution, that his defense was hindered or that he was surprised by the evidence offered at trial. Berger v. United States, 295 U.S. 78, 82 (1935); United States v. Palmiotti, 254 F.2d 491, 495 (2d Cir. 1958); Brilliant v. United States, 297 F.2d 385, 390 (8th Cir.), cert. denied, 369 U.S. 871, 82 S.Ct. 1140, 8 L.Ed.2d 275 (1962).

Judgment affirmed.