## State of Connecticut *v.* Carmen Masse

Appellate Division of the Circuit Court

File No. CR 15-12098

Argued September 30—decided November 1, 1968

*John P. McKeon,* of Hartford, for the appellant (defendant).

*Arnold Markle,* chief prosecuting attorney, for the appellee (state).

Jacobs, J. The defendant, in a trial to the jury, was convicted of the crime of pool selling in violation of § 53-295 of the General Statutes and has appealed.

The first assignment of error relates to the denial of the defendant's motion for a mistrial based upon the prosecuting attorney's allegedly improper remarks in his opening argument to the jury. The court denied the motion. See *Ferino* v. *Palmer,* 133

Conn. 463, 466; *State* v. *Kemp,* 126 Conn. 60, 83; *State* v. *Santello,* 120 Conn. 486, 494; *DeLucia* v. *Kneeland,* 108 Conn. 191, 193. This assignment of error need not detain us because it "falls into the class of assignments of error which are not pursued in the brief and will be disregarded." *Bridgeport Hydraulic Co.* v. *Stratford,* 139 Conn. 388, 390; see *Krejpcio* v. *Zoning Board of Appeals,* 152 Conn. 657, 659; Maltbie, Conn. App. Proc. § 167.

We would be justified in declining to review the defendant's claim of unconstitutionality of the pool-selling statute (§ 53-295) upon the ground that the question was not raised in the trial court under normal procedural requirements. See *Walters* v. *Warden,* 155 Conn. 316, 319; Maltbie, Conn. App. Proc. § 306. Ordinarily, "we do not, on appeal, entertain a claim which was not advanced in, or passed upon by, the court below." *State* v. *Rafanello,* 151 Conn. 453, 456. Were this not an attack upon the constitutionality of a statute, we would give this assignment of error no further consideration. "But the public character of the case and the practical importance of the question involved lead us to briefly discuss it upon the merits." *Donovan* v. *Davis,* 85 Conn. 394, 399.

The statute under attack here was first enacted, under the title "An Act to Prevent Pool Selling," some seventy-five years ago. Public Acts 1893, c. 68. With some variations from time to time in phraseology and modifications in the penalty provisions, our pool-selling statute has appeared in successive revisions of the statutes ever since it was first enacted in 1893. Rev. 1902 § 1359;[1] Rev. 1918 § 6433; Rev. 1930 § 6280; Rev. 1949 § 8672; Rev. 1958

[1] The text of Rev. 1902 § 1359 is printed in *State* v. *Scott,* 80 Conn. 317, 319 n.

§ 53-295.[2] Many persons in this state have been tried, convicted and sentenced under the statute. See *State* v. *Harbourne,* 70 Conn. 484; *State* v. *Scott,* 80 Conn. 317; *State* v. *Fico,* 147 Conn. 426; *State* v. *Rafanello,* supra (denial of writ of habeas corpus aff'd in *United States ex rel. Rafanello* v. *Hegstrom,* 336 F.2d 364); *State* v. *Miller,* 24 Conn. Sup. 247, 1 Conn. Cir. Ct. 534; cf. *State* v. *Pac,* 23 Conn. Sup. 12, 1 Conn. Cir. Ct. 117; *State* v. *Matula,* 2 Conn. Cir. Ct. 127; *State* v. *Audet,* 3 Conn. Cir. Ct. 235.

In *State* v. *Caruso,* 42 Del. 310, in sustaining the constitutional validity of Del. Code Ann. tit. 11, § 669 (1953), which is very much like our pool-selling statute, the Court of General Sessions of Delaware said (p. 320): "In *State* v. *Scott,* 80 Conn. 317, [319] . . . the Court used the following language, which shows what the attitude of the Courts has been in construing statutes dealing with offenses of this character; 'For more than 200 years we have treated wagering as against public policy, and playing at the games which promote wagering has been illegal. In the legislation adopted for the suppression of gaming we have uniformly treated those who promote the offense, either by furnishing a place convenient for its commission or any implement used in its commission, as more dangerous to society and deserving a much greater penalty than the persons who win or lose their money.' " The court went on to hold (p. 321) that when the statute is given a reasonable interpretation it is not vague and uncertain and is not arbitrary or unreasonable. Twenty years later,

---

[2] In 1965, the statute was amended by increasing the penalty to, on a first conviction, a fine of not more than $1000 or imprisonment of not more than one year or both fine and imprisonment, and on a second or subsequent conviction, a fine of not less than $500 nor more than $3000 and imprisonment of not less than thirty days nor more than three years; "and each day of such owning, keeping, occupying, permitting or transmitting shall constitute a separate offense." Public Acts 1965, No. 383.

in 1962, the Superior Court of Delaware, in *State* v. *DiMaio*, 55 Del. 177, 179, could "find no reason to overrule *State v. Caruso* [supra]." See 38 C.J.S., Gaming, § 2(a).

It is too late in the day for us to say that the pool-selling statute must fall because it is arbitrary and vague and lays down no standard of criminality. "[I]f the question [of the unconstitutionality of the pool selling statute] is to be reopened . . . [our] Supreme Court must open it." *United States* v. *Rebhuhn*, 109 F.2d 512, 514; *State* v. *Muolo*, 119 Conn. 323, 326; *Waters* v. *Greer*, 2 Conn. Cir. Ct. 580, 583.

Finally, we take up the defendant's contention that the "contents' of a phone call, intercepted by a police officer while on defendant's premises in which the caller allegedly placed bets on several horses should not have been admitted into evidence."

On September 13, 1966, Detective McDonnell, together with two other police officers, entered the defendant's tobacco and novelty shop, known as East Main Tobacco Store, in New Britain, at which time, pursuant to a search warrant, they conducted a search of the person of the defendant and the premises. They found a tally sheet, which is a record kept by a bookmaker. They also found two Armstrong Daily scratch sheets, both dated September 13, 1966, which contained a list of the races, the names of the horses, the jockeys and their weights, running on different racetracks in different parts of the United States. During the progress of the search, the telephone rang. In the presence of the defendant, Detective McDonnell answered the telephone. He testified that an unidentified male caller asked: "Is this Mike?" The officer replied, "Yes," whereupon the caller recited the following: "The fifth—Atlantic City . . . Aunty Anne 2.00 to win. Lady Orr . . . the ninth at Hagerstown . . . $5.00

to win. Mag's Request . . . ninth at Hagerstown, Dune's Debbanar . . . third at Aqueduct, Pana Joy . . . the fourth at Atlantic City. One if two reverse and Phyllis D the fifth at Atlantic City, $10 to win."

"Telephone calls received by police during a raid are admissible." *Commonwealth* v. *Tselepis,* 198 Pa. Super. 449, 452. "It often happens that a police officer, while raiding or searching a gambling house, will answer telephone calls received there. In such case, his testimony that persons called up to place bets is admissible, although it is not admissible to establish the truth of what was said." 3 Underhill, Criminal Evidence (5th Ed.) § 834, p. 1875; see *State* v. *DeNegris,* 153 Conn. 5, 12; *State* v. *Tolisano,* 136 Conn. 210, 214; *People* v. *Reifenstuhl,* 37 Cal. App. 2d 402, 405; *Chacon* v. *State,* 102 So. 2d 578, 591 (Fla.); note, 13 A.L.R.2d 1409, 1414. So, here, the telephone call was "admissible as evidence that bets were being placed but not that the statements made to the officers were true. The evidence is admitted, not as an exception to the hearsay rule, but because it is not within the rule." *State* v. *Tolisano,* supra.

We find nothing in the record as presented before us to justify a reversal of the judgment.

There is no error.

In this opinion KOSICKI and WISE, Js., concurred.